JOSEPHINE CARRADINE, Respondent, v. JOHN W. FORD, Jr., et al., Appellants.

St. Louis Court of Appeals. Argued and Submitted May 4, 1916. Opinion Filed June 6, 1916. Opinion on Motion for Rehearing and to Transfer to Supreme Court Filed July 11, 1916.

1. **ROADS AND HIGHWAYS:** Relative Rights of Pedestrians and Drivers of Vehicles. A pedestrian has the same rights on a street or highway as a driver of a vehicle drawn by horses or propelled by steam, gasoline or electricity.

2. **NEGLIGENCE:** Contributory Negligence: Proximate Cause. The rule as to the *quantum* of contributory negligence which is sufficient to prevent a recovery is, that it must be such as to enter into and form the direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened.

3. **AUTOMOBILES:** Injury to Pedestrian: Contributory Negligence: Failure to Look for Approaching Automobile. A pedestrian who, before starting to cross a street, looks and sees an automobile approaching, about a block away, and, assuming that it is not within striking distance, starts across the street without looking again, and is struck, is not by reason of his failure to continue to observe the movements of the automobile guilty of contributory negligence as a matter of law; the rule requiring one to look and listen, on approaching a railroad or street railway track, not applying to a person crossing a highway upon which automobiles are running, since he hs the right to presume that the automobile driver will exercise the care enjoined upon him by law.

4. ———: ———: ———: ———: Proximate Cause: Facts Stated. In an action for personal injuries sustained by plaintiff by being struck by defendant's automobile upon a public street crossing, it was shown that plaintiff, who was walking south, looked both east and west before leaving the north curb and saw an east-bound automobile not far distant; that she stepped into the street and waited for this automobile, which was traveling on a line slightly south of the center of the street, to pass; that immediately after it passed; she resumed her journey, without again looking west, and was

struck by another east-bound automobile, following directly in the route over which the first machine had passed; that, when she looked west, before leaving the north curb, she had a dim recollection of seeing a second automobile, east-bound, but it seemed to be too far away to reach her before she crossed out of its path, and she did not look for it again before, or while proceeding across the street; and that the automobile was driven at the rate of twenty miles per hour and no warning signal was given as it approached plaintiff. *Held*, that plaintiff, seeing the automobile quite a distance away, had a right to assume that, running at the usual rate of speed, it would not reach the place at which she was crossing the street until after she had crossed, and hence she was not guilty of contributory negligence as a matter of law, in failing to keep a lookout for approaching automobiles; *held, further*, that, although plaintiff may have been somewhat negligent in failing to exercise more care while crossing the street, that fact did not release defendant from liability for the consequence of his negligence in driving the automobile at a reckless rate of speed without giving warning of its approach.

5. ———: ———: ———. A person who, knowing that an automobile is approaching, steps in front of it, is not entitled to recover for the ensuing injuries.

6. ———: ———: **Violation of Ordinance: Sufficiency of Petition.** In an action for personal injuries sustained by plaintiff by being struck by defendant's automobile upon a public street crossing, an allegation in the petition, to the effect that, on the day of the accident, a city ordinance, providing that vehicles, except when passing a vehicle ahead, shall keep as near to the right-hand curb as possible, and that defendant, "in violation of the city ordinance and the law, was driving  .  .  .  .  without keeping as near as possible to the right-hand curb," sufficiently pleaded a violation of the ordinance.

7. **TRIAL PRACTICE: Appellate Practice: Sufficiency of Objection to Evidence.** An objection, that an ordinance is inadmissible under the petition is so general that it means nothing and hence does not present a question for review by the appellate court.

8. ———: **Appellate Practice: Sufficiency of Objection to Evidence: Automobiles: Speed Ordinance.** In an action for personal injuries sustained by plaintiff by being struck by defendant's automobile upon a public street crossing, *held* that the question as to whether a municipal ordinance fixing the maximum rate of speed was in conflict with the statutes could not be considered, where the objection was merely that the ordinance was inadmissible under the petition.

9. **AUTOMOBILES: Violation of Speed Ordinance: Negigence Per Se.** The violation of a municipal ordinance prescribing the maximum rate of speed for automobiles is negligence *per se*.

ON MOTION FOR REHEARING AND TO TRANSFER TO SUPREME
COURT.

10.  **APPELLATE PRATICE:** New Points Raised in Motion for Rehearing: Review. A point which is not raised in the original assignment of errors, but is raised for the first time in a motion for rehearing, may be ignored.

11.  **AUTOMOBILES:** Injury to Pedestrian: Violation of Statute and Ordinance: Sufficiency of Petition. In an action for personal injuries sustained by plaintiff by being struck by defendant's automobile upon a public street crossing, an allegation, following allegations concerning the provisions of certain municipal ordinances, that defendant, in violation of the duty imposed "by law as well as by ordinance, negligently, and without using the care required by law to prevent injury to plaintiff, ran said automobile at a high and dangerous rate of speed, and at a rate in excess of ten miles an hour, and without sounding any warning, and without slowing down as she approached the said crossing, into and upon plaintiff, thereby with great force and violence striking plaintiff," sufficiently charges a violation of the statute regulating the operation of motor vehicles, as well as a violation of the ordinances pleaded, so that the petition would not be fatally defective, even if it were true that the ordinances counted on were invalid.

12.  **CONSTITUTIONAL QUESTION:** Time of Raising. A constitutional question must be lodged in the case at the earliest moment that good pleading and orderly procedure will admit, under the circumstances of the case, otherwise it will be waived.

13.  ———: ———: Certifying Case to Supreme Court: Facts Stated. Where the answer did not plead that a municipal ordinance counted on in the petition was unconstitutional and no objection to its introduction in evidence was made on that ground nor any such point made in the trial court at any other time, and the point was made for the first time on a motion for rehearing filed in the Court of Appeals, it was waived, for the reason that it was not raised at the first opportunity, and hence the court would not be warranted in certifying the case to the Supreme Court, as involving a constitutional question, within the meaning of Sec. 12, Art. VI. and Sec. 5 of the Amendment of 1884 to Art. VI. of the Constitution.

14.  **APPELLATE PRACTICE:** Review: Points not Raised Below. Under Sec. 2081, R. S. 1909, declaring that no exceptions shall be taken in any appeal or writ of error, to any proceeding in the lower court, except such as have been expressly decided by such court, the question of the validity of municipal ordinances regulating the speed of motor vehicles cannot be raised on appeal, where not raised below.

15.  ———: ———: ———: Jurisdictional Questions. The question of whether a petition totally fails to state a cause of action, or

whether the case is one within the jurisdiction of the court, is open for consideration on appeal, even if no attack has been made on it below, for the reason that such questions relate to the jurisdiction of the court.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*Henry W. Blodgett* for appellants.

(1) It is the duty of a pedestrian on a public highway to watch for the approach of automobiles, and the failure to do so is negligence. Brewster v. Baker, 129 App. Div. 724; Kauffman v. Nelson, 225 Pa. St. 174; Hannegan v. Wright, 5 Penn. 537; Ginter v. O'Donoghue, 179 S. W. 732; Cotton v. Wood, 8 Comm. Bench. 566; Baker v. Savage, 45 N. Y. 191; Uiosi v. Empire Laundry, 117 Cal. 257; Zoltovski v. Gzella, 159 Mich. 620; Wilkins v. N. Y. Transp. Co., 101 N. Y. Sup. 650; Harris v. Commercial Ice Co., 153 Pa. State 278; Minor v. Stevens, 65 Wash. 423. (2) If a pedestrian sees an automobile approaching near him on the street which he purposes crossing, he must continue to observe its movements, and failure to do so is negligence on his part. McCormick v. Hesser, 77 N. J. L. 173; West v. N. Y. Transp. Co., 94 N. Y. Supp. 426. (3) Stepping in front of an approaching automobile is negligence on the part of a pedestrian. Polsky v. N. Y. Transp. Co., 88 N. Y. Supp. 1024; Harris v. Commercial Ice Co., 153 Pa. State 273. (4) It was error on the part of the trial court to allow the respondent, over the appellant's objection, to read in evidence Ordinance 1327 of the city of St. Louis, and to give that part of respondent's first instruction which advised the jury that if they believed the appellants had violated said ordinance that their verdict should be for the respondent, for the reason that said ordinance is not pleaded specifically or in substance in the respondent's petition and was therefore no part of respondent's case. Corneli v. Partridge, 3 Mo. App. 575; Cox v. St. Louis, 11 Mo. 431; Mooney

v. Kennett, 19 Mo. 551; Keane v. Klausman, 21 Mo. App. 485; State v. Oddle, 42 Mo. 214; St. Louis v. Roche, 128 Mo. 541; Barley v. K. C., 189 Mo. 503. (5) The speed ordinance upon which the instruction in this case is bottomed is in conflict with, and inconsistent with the Act of 1911, and is therefore void. Session Acts 1911, p. 322, etc.; Constitution of Mo., art. 9, secs. 23 and 25; R. S. 1909, sec. 9582; Old Charter City of St. Louis, sec. 26, art. 3. (6) Any speed in excess of the speed limit prescribed by valid ordinance is negligence *per se* under the universal doctrine in this State. Nutter v. Railroad, 22 Mo. App. 328, 332; Judd v. Railroad, 23 Mo. App. 56, 61-62; Mulderig v. Railroads, 116 Mo. App. 655, 665; Sluder v. Transit Co., 169 Mo. 107; Bragg v. Railroad, 192 Mo. 291, 450; Cabanne v. St. Louis Car Co., 178 Mo. App. 716, 732. (7) The courts of this State have universally held that a city ordinance which is in conflict with and inconsistent with a State statute, is void. St. Louis v. Meyer, 185 Mo. 583, 591; St. Louis v. Wortman, 213 Mo. 143; St. Louis v. Klausmeier, 212 Mo. 129; St. Louis v. Williams, 235 Mo. 508; St. Louis v. DeLarsus, 205 Mo. 584; St. Louis v. Tilkemeier, 226 Mo. 136; St. Louis v. Dreisserner, 243 Mo. 217; Peterson v. Railroad, 265 Mo. 462; Owen v. Railroad, 38 Wis. 470; Ex parte Smith, 140 Pac. 82; Commonwealth v. Newhall (Mass.), 91 N. E. 206. (8) The streets of the city of St. Louis are held by the General Assembly as supreme trustee, and that body has a right to revoke the power of municipalities to regulate the speed of motor vehicles upon streets. Schopp v. City of St. Louis, 117 Mo. 131; Corly v. Railroad, 150 Mo. 468; 28 Cyc. 287-288; Ferrenbach v. Turner, 86 Mo. 416; Julia Bldg. Assn. v. Bell Telephone Co., 88 Mo. 258; Morie v. St. Louis Transit Co., 116 Mo. App. 22; R. S. 1909, sec. 9752.

*Percy Werner* for respondent.

(1) (a) On the issue of contributory negligence, plaintiff is entitled to the full force of all uncontroverted facts, and to all her controverted evidence, and

to every reasonable and favorable construction and inference deducible from all the evidence. Charlton v. Railroad, 200 Mo. 413-441; Powers v. Transit Co., 202 Mo. 267-280; Grouch v. Heffner, 184 Mo. App. 369; McFern v. Gardner, 121 Mo. App. 1; Thompson v. Livery Co., 214 Mo. 497. (b) Unless the only conclusion that can reasonably be drawn from the evidence is that plaintiff was guilty of contributory negligence—only when there can reasonably be no two opinions on the subject— should a demurrer to the evidence be sustained. Campbell v. Railroad, 175 Mo. 161. (c) In crossing the street as a pedestrian plaintiff had the right to presume, and regulate her movements upon the presumption, that the driver of an approaching automobile would obey the law, i. e., not run at a rate of speed to exceed the maximum allowed by the ordinance, sound a signal so as to give her due warning of the approach, coming from the west keep as close to the south curb as possible, and exercise the highest degree of care that a very careful person would exercise to prevent injury to her. Hutchinson v. Railroad, 161 Mo. 246. (d) There is no imperative rule of law requiring a pedestrian, when lawfully using the public ways, to be continuously looking or listening to ascertain if auto cars are approaching, under the penalty that, upon the failure so to do, if she be injured, her own negligence must be conclusively presumed. Bongner v. Ziegenhein, 165 Mo. App. 328; Hodges v. Chambers, 171 Mo. App. 561. Even mere poor judgment will not "degenerate into negligence." Strauchon v. Railroad, 232 Mo. 587. (e) It is the duty of the driver of an automobile to keep a vigilant watch ahead for vehicles and pedestrians and, on the first appearance of danger, to take proper steps to avert an accident, the same rule obtaining which applies to a motorman in charge of a street car. McFern v. Gardner, 121 Mo. App. 1; Quoted with approval by the Kansas City Court of Appeals in Hall v. Compton, 130 Mo. App. 675. (f) Under the evidence in this case as to violation of the speed ordinance and the failure to give the required signals, plaintiff

would have been entitled to recover had she been struck by a railroad train whilst crossing a railroad track. Strauchon v. Railroad, 232 Mo. 587; Hutchinson v. Railroad, 161 Mo. 246; Criss v. United Railways Co., 166 S. W. 834. (2) The ordinance provision requiring a vehicle, except when passing a vehicle ahead, to keep as near the right hand curb as possible, was specifically pleaded. (3) (a) The statutory provision with reference to speed in the Act of 1911 is simply declaratory of the common law with a modification of the rule of evidence, and is not inconsistent with the city ordinance prescribing the maximum rate of speed allowable, which is a valid ordinance notwithstanding the provisions of the statute. St. Louis v. Klausmeier, 213 Mo. 119. (b) Even if the point were sound, it was waived. Ex parte Smith, 135 Mo. 223; In re Flukes, 157 Mo. 127; Ex parte Neet, 157 Mo. 537; Henderson v. Koenig, 192 Mo. 710. Neither in the pleadings, nor by attack on the petition, nor by objection to evidence, nor by instruction, nor in the motion for a new trial, was the point made that the ordinance was void for any reason. On the contrary defendant's instructions adopt the same theory as the plaintiff's. (c) Defendants tried the case below on the theory that the ordinance was in force and was valid. They cannot change this position in the appellate court. Darlington Lumber Co. v. Railroad, 216 Mo. 658; Brown v. Appleman, 83 Mo. App. 84; Cobb v. Houston, 117 Mo. App. 645; Gayle v. Car & Foundry Co., 177 Mo. 427; Columbia Brewing Co. v. Miller, 124 Mo. App. 384; Dice v. Hamilton, 178 Mo. 90; Meyer Bros. Drug Co. v. Bybee, 170 Mo. 369; Heman v. Larkin, 108 Mo. App. 398; Citing Womach v. St. Joseph, 168 Mo. 242; Marrieless v. Railroad, 163 Mo. 486; Phelps v. Salisbury, 161 Mo. 1.

REYNOLDS, P. J.—This is an action to recover damages for injuries said to have been sustained by plaintiff, while, as a pedestrian, she was crossing at the intersection of Washington and Pendleton avenues, public streets in the city of St. Louis, by being struck by an

Carradine v. Ford.

electric automobile, which ran into and knocked her down, seriously injuring her. The accident occurred on October 27, 1912. (In certain paragraphs of the petition the accident is laid as having occurred October 11, 1912. This, however, is evidently a clerical error, as the uncontroverted evidence is that it occurred on October 27 of that year, so in referring to the date, we will treat it as of October 27 instead of October 11.) It is alleged that the electric automobile was at the time owned by the Priesmeyer-Stevens Automobile Company, but at the time of the accident was in the charge and control of defendant John W. Ford, Jr., under some arrangement between him and the automobile company pending the purchase of another car from that company by Mr. Ford. As the cause was dismissed as to the Priesmeyer-Stevens Automobile Company on demurrer, and plaintiff having failed to plead further as to that defendant, judgment was entered in its favor. No error is assigned to this, so it is unnecessary to notice the connection of that company with the case. At the time of the accident the automobile, it is charged, was being run by Mrs. Flora L. Ford, the wife of the defendant John W. Ford, Jr.

It is averred that at the date of the accident there was in force in the city of St. Louis, "an ordinance which, among other provisions, provided that drivers of motor vehicles shall, when approaching a crossing on the public street, sound their signal in such a way as to give warning to other vehicles and to pedestrians of their approach. There was also on said date an ordinance in force in said city which provided that no automobile, motor vehicle, locomobile, or horseless vehicle, propelled by the use of electricity, gasoline or steam, . . . shall be moved or propelled along, over, or upon any public street, avenue, boulevard or other public place at a greater rate of speed than is reasonable, having regard to the traffic and use of such street, avenue, boulevard or public place, or so as to endanger the life or limb of any person, and shall not in any event, while upon any such street, . . . be moved or propelled at a greater rate of speed than eight miles an hour in

the business portions of said city, and not greater than ten miles an hour in other portions of said city.''

It is alleged that the point at which the accident occurred, that is to say, the intersection of Washington and Pendleton avenues, was not in the business portion of the city and that Pendleton avenue is a north and south, and Washington avenue an east and west street. It is further averred that under the laws of this State and at the time set forth in the petition, it was the duty of persons owning, operating or controlling an automobile upon any public street, avenue or other place much used for travel, to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury to persons on such street, and on approaching a pedestrian on the travelled parts of a highway, and upon approaching an intersecting highway, to slow down and give a timely signal. Averring that at the time of the accident plaintiff was a pedestrian crossing Washington avenue southwardly upon the east crossing of Pendlton avenue at Washington avenue, where, as it is averred, by the exercise of ordinary care, she could have been seen by Mrs. Ford in ample time to have avoided all injury to her, it is charged that Mrs. Ford, in violation of the duty imposed by law and ordinances upon persons owning, operating or controlling an automobile running along, over and upon a public street or avenue, as above set out, negligently and without using the care required by law to prevent injury to plaintiff, ran the automobile at a high and dangerous rate of speed and at a rate in excess of ten miles an hour and without sounding any warning and without slowing down as she approached the crossing, into and upon plaintiff, and with great force and violence striking her, knocking her down and seriously and permanently injuring her. Stating the extent and duration of her injuries and loss of her earnings in her professional work as a musician, damages are laid at $30,000, for which she demands judgment

The answer, after a general denial, pleads contributory negligence on the part of plaintiff.

A reply in general denial of the affirmative defense was filed.

By stipulation between counsel and before a trial, the petition was amended by inserting in it an averment to the effect that on the date of the accident there was also an ordinance of the city in force which provided that a vehicle, except when passing a vehicle ahead, shall keep as near to the right-hand curb as possible. By like stipulation there was also inserted in the petition the words, "and without keeping as near as possible to the right-hand curb of said avenue," coupling this with the charge that Mrs. Ford, in violation of the city ordinance and the law, was driving at a rate in excess of ten miles an hour and without sounding any warning, and without slowing down as she approached the crossing.

At the trial before the court and a jury, a verdict was returned in favor of plaintiff and against the defendants John W. Ford and his wife, for $3500, judgment following. Interposing a motion for new trial, as well as one in arrest, and these being overruled, the defendants have duly appealed to our court.

Three errors are here assigned. The first is, that the trial court erred in overruling appellant's demurrers at the close of plaintiff's case and at the close of all the evidence offered, because respondent was guilty of gross negligence which directly contributed to her injuries.

On a careful reading of all the testimony offered in behalf of plaintiff, and that is the testimony to be considered in passing on this demurrer, we are unable to hold, as a matter of law, that plaintiff was guilty of contributory negligence. Her own testimony is that she was a young woman at the time of the accident about twenty-two years old, living on Morgan street, in St. Louis, and attending both as pupil and teacher a school of music situated in the Musical Arts Building, located on the corner of Boyle avenue and Olive street, in that city. She started from her home for that place, it being a little over three blocks south of her starting point, about eleven o'clock on the morning of October 27, 1912, that being a bright, clear day. She walked east to Pen-

dleton avenue which was the first street east of her home, crossed to the east side of that street at Delmar, the next street south of Morgan, and walked along the east sidewalk of Pendleton avenue after crossing Delmar, until she reached the intersection of Pendleton with Washington, the Musical Arts Building being on Olive street and about a quarter of a block east of the intersection of Pendleton and Olive. When she reached Washington avenue and before she stepped off the curb, she looked west and saw an automobile coming from the west along Washington not very far west of Pendleton. She stepped off of the east sidewalk or curb of Pendleton and into Washington and waited for this machine, which was propelled by gasoline power, to pass. When it had passed she started to walk straight across Washington in a straight line from the east pavement on Pendleton. She testified that when she reached the curb of Pendleton and Washington, and was about to step into the street—Washington avenue—she looked west along Washington and "had an impression" that when she looked west up Washington avenue she saw a second automobile behind this gasoline machine but some great distance back of it. As she testified, "It was so far down the street that I didn't pay any attention to it, much; but I just remember that there was another machine in the distance." She could not swear positively that that was the machine that hit her, for she was knocked senseless. She testified that she had heard no noise from any approacing machine or signal of any kind, either the sounding of a gong or ringing of a bell; that she was accustomed to automobiles and to their signals; that Washington avenue, as she knew, was a travelled highway and used a great deal by automobiles. She again testified, when asked if she knew what struck her, that she had seen this electric automobile an instant before it struck her; turned her head just before that and got the impression that the machine was close to her, but the striking was so sudden that it was a mere impression as to the machine which struck her, but she saw that there were several women in it. She repeated

that she did not remember the fact of being struck, for she was knocked unconscious and the next thing she remembered was when she came to herself in the hospital. She testified that after the first automobile, the one driven by gasoline, had passed, while she could not be definite, she thought she had taken only a few steps from the sidewalk into the street. The automobile that passed her was toward the center of the street, a little south of the center and going east, and she took several steps off the curb before she reached that automobile when she stopped to let it pass. She was struck, as near as she could tell, by the following automobile directly in the route which the first automobile had passed over; that is to say, the following automobile was traveling about in the tracks of the forward one.

On cross-examination, plaintiff testified that after the gasoline car had passed, she started immediately to cross the street back of that car; that she did not look either way before she did this; did not look for the following machine; that after the gasoline machine had passed her, she walked right on without looking, and started on across; had taken a few steps in the street when the following machine struck her. Asked if there was anything to prevent her seeing the following machine if she had looked, she said she supposed not; that if she had stopped where she was at the time the forward machine passed, she supposed the following one would have passed without hitting her; as she had not seen this following machine she could not tell how fast it was coming, but that when she did see it, and before she left the curb to cross over behind the forward machine, the electric automobile was so far west and down the street that she never thought of it; did not notice its speed; it seemed to her to be too far away to be able to cover the distance between where it was when she saw it and where she was attempting to cross the street; when she turned her head just before the electric struck her, it seemed to be coming fast, but she did not know its speed. Asked by the court if she had seen this following machine, the one that struck her, the first time

she looked, she answered that she had a dim recollection of a second machine following the gasoline car further down the street; she could not say exactly how far down but so far that the speed did not make any impression at all on her; it had passed Newstead avenue coming east, Newstead avenue being the street immediately west of Pendleton avenue, and was in the block between Newstead and Pendleton avenues, on Washington avenue, following the other machine, and when she saw it was about a block away from the gasoline car.

Asked by the court how far behind the first machine it was when she saw it, plaintiff answered that she could not say exactly, except that it was so great a distance that it never occurred to her that it would catch up before she could cross. Asked by the court if she had any idea as to the number of feet, she said she had not.

Counsel for defendants, continuing the cross-examination, asked her, when she looked up the street and saw that following machine, if that was just when she stepped down off the curb or just after she got down in the gutter. She answered that before she stepped off the curb she had looked to see what, if anything, was coming, and that she did this while still on the sidewalk. She looked up the street, that is to the west, and saw this following machine and then stepped down over the gutter and into the street without looking west again. Asked if she had not walked as far as the middle of the street from the curb; she answered that she did not think she had walked that far; she first went just far enough into the street so that the first would pass her and leave a space between her and it, then, that car having passed, she stepped along behind it in the street. After she had stood on the sidewalk and looked west up Washington avenue and saw this following machine at a distance, she repeated, she did not look again.

Asked by the court if she had stood in the middle of the street after she got there, she answered she had stood in the street just for the first car she was waiting for to pass her. Asked if she had stood there for a sec-

ond or two, she said, "No," that to the best of her recollection she could have hurried across the street in front of the first car; that car was on the other side of Pendleton. She further testified that she did not pay any attention to the following car; stepped down off of the curb as a warning to the people in the gasoline car that she was wanting to cross and when that car went by, she attempted to go on.

Asked by counsel for defendants if she had a roll of music in her hand at the time and if she had not been looking at that when she was struck, she said, "No." Asked if she was not doing that, and because of that had failed to see the second automobile, she answered that she had not paid any attention to the fact of the second machine; it was so far that she never considered the fact of its being able to cover the distance; "that you naturally estimate, when you go into the street, what was coming" and she saw only one machine that seemed to make any difference with her crossing. Asked if on this occasion she had crossed the street without looking up, s'.e answered there was nothing coming from the east and there was just this one machine, the gasoline car, that seemed to be close to her; she waited for it to pass and the other one, the following one, did not seem to be close enough to be counted in. While she could not say positively that the machine she had seen at a distance was the one that struck her, she did remember seeing the machine that struck her just before it struck her. The machine was then on her and she had 'no chance to get away.

Other witnesses testified that they saw Miss Carradine, the plaintiff, attempting to cross the street; that she had reached about the center of it and stopped to let one automobile pass. The electric automobile was coming east and after the gasoline machine had passed, plaintiff started to cross and was struck by this electric coupe, which was coming east on Washington avenue on the south side of the street at a rapid gait.

A motorcycle policeman testified that the electric automobile was driven by Mrs. Ford; that there were

three ladies, a child and a baby in it; that at the time it struck plaintiff, it was running at about twenty miles an hour; that after striking her it ran down the street; possibly a hundred and fifty feet, and then into the curb. Another witness testified to the same effect as to the speed of this oncoming electric motor car and said that he saw the accident; that the electric machine was about two lengths behind the gasoline machine; that plaintiff was at the regular crossing; that he supposed the left front spring of the electric machine struck plaintiff, as he found scraps of clothing, etc., on it; that the machine knocked plaintiff about ten feet and then ran over her and carried her about twenty feet further. These witnesses testified that the electric automobile was south of the center line of the street about half the width of the machine, and when plaintiff attempted to pass over behind the first machine, this second machine was about two lengths behind. It made no sound and gave no warning; that it ran about two hundred feet east after striking Miss Carradine, and when it stopped at the curb it was about two hundred feet behind the gasoline car.

This is practically the testimony for plaintiff, and while there were a number of witnesses examined on behalf of defendants, it cannot be said that its general effect was shaken or contradicted in any material respect. Mrs. Ford, however, testifying, said she was not going over eight miles an hour; that she saw plaintiff standing in the center of the street; that she looked up and saw the electric and walked right into it; that when she saw plaintiff standing in the street her car was about a hundred feet west of Pendleton and that plaintiff was about a hundred feet east of that street, crossing diagonally. On this state of facts the question of contributory negligence was for the jury. We cannot say, as a matter of law, that plaintiff was guilty of contributory negligence.

It is argued by learned counsel for appellants, in support of his proposition that the court erred in refusing to take the case from the jury because of the contributory negligence of plaintiff, that it is the duty of a

pedestrian on a public highway to watch for the approach of automobiles and that failure to do so is negligence. That is the first and, apparently, controlling ground upon which he relies for a reversal of the judgment in this case; in fact, we are advised by the memorandum of the learned trial judge, which appellants' counsel has seen fit to embody in his abstract of the record and bring before us, that in support of the motion for new trial defendants relied solely upon the contention that plaintiff's own evidence shows her to have been guilty of such contributory negligence as to preclude her as a matter of law from recovering. The trial court, in this memorandum, says that in support of this proposition learned counsel had cited numerous cases from Missouri, declaring that the duty to look is a continuing one and that the duty does not cease until after the range of danger has been passed, and had asked the trial court to apply these authorities to the facts in this case. The learned trial judge, however, very correctly remarked that counsel had overlooked the fact that all of the cases cited and relied upon by him are cases involving either the crossing of a railroad track or the crossing of a street car track and were so decided for the reason that a street car track or a railroad track is held to be in and of itself a signal of danger. In his brief before us, however, the learned counsel for appellants, apparently abandoning this line of Missouri cases, has cited a number of cases from other jurisdictions in support of his proposition as to the duty of a pedestrian to watch for the approach of automobiles and that the failure to do so is negligence. Whatever may be the rule in other jurisdictions, the rule is otherwise in our State. So it was held in Bongner v. Ziegenhein, 165 Mo. App. 328, 147 S. W. 182. That was a decision of our court, the opinion written by Judge NORTONI.

In Hodges v. Chambers, 171 Mo. App. 563, 154 S. W. 429, Judge ALLEN there speaking for our court, after holding that the great number of cases dealing with the duty of one in crossing or walking upon railroad tracks or street car tracks, while correctly applied in cases of

that kind, because such tracks are in themselves a warn-/
ing of danger, holds (l. c. 570) that such cases have no
application in the case of a pedestrian travelling along
the street, for the reason that the pedestrian going along
the public streets of the city or town has as much right
upon a driveway as anyone else and has a right to pre-
sume that one. driving an automobile would exercise that
degree of care enjoined upon him by law.   This principle
is so sound and so in line with modern conditions, that it
ought not to be questioned anywhere.

The rule contended for by learned counsel for appel-
lants as to the superior right of vehicles in the public
highways over the right of pedestrians, undoubtedly had
its origin in conditions prevailing in feudal times and in
monarchal countries, when the "common people" trudged
along these highways on foot and the King and his nobles
and courtiers rode over them, the "common people,"
being pedestrians, having no rights on them which the
King and nobles were to or did respect.   That is not so
in our day and, especially, in our Republic.   With us, all
have an equal right to the use of public ways and each
must so use them as to have due regard to the rights as
well as the safety of others.   People driving machines
propelled by power, whether animal or mechanical, must
have due regard to the safety of pedestrians.   In brief,
and as said by our court in the two cases referred to, the
right of the pedestrian to proceed along the streets and
highways of the city and of the country, is just as high
as that of the person in a vehicle drawn by horse power
or propelled by steam, gasoline or electricity.

As concerning the contributory negligence of the re-
spondent, our Supreme Court, in the recent case of How-
ard v. Scarritt Estate Co., 267 Mo. 398, 184 S. W.
1144, has said:

"It is not the law that the least negligence of him
who is hurt will excuse an otherwise guilty tort-feasor
for his negligent act.   [Citing cases.]   It is plain (and
it has so been ruled) that to hold otherwise would be to
hold that there exists in this State the doctrine of com-
parative negligence, a doctrine which has been, when

sought to be invoked, always expressly repudiated. [Citing cases.] The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened.''

In line with what is said by our Supreme Court in the Howard case, supra, and as applicable to the facts in the case at bar, our Supreme Court, in Strauchon v. Metropolitan St. Ry. Co., 232 Mo. 587, 135 S. W. 14, has held that the conduct of the plaintiff there, as shown by the evidence, can only be characterized as poor judgment but does not degenerate into negligence. That is a case where a pedestrian attempting to cross a street railway track, looks and sees from a straight line, or an acute angle, a car approaching two hundred feet away, and supposing that at the usual speed of cars on the track at that point he will have ample time to cross, thereafter gives no further heed to the approach of the car. In such case, it was there held that the pedestrian is not chargeable with contributory negligence in assuming that he could have crossed in safety.

Applying the above rule here, there is evidence tending to show that Mrs. Ford, the driver of this electric machine, was coming at an excessive speed—twenty miles an hour—along one of the most frequented thoroughfares in the city of St. Louis, in the center of the most populous residence district of the city; that she was driving her machine without a sound of warning. The evidence is that these electric machines move along almost noiselessly over a street such as this, a wooden block pavement covered with creasote and sand, and coming along at this rate of speed, which under the circumstances and the place was reckless, it ran upon this unfortunate young woman and inflicted serious and possibly permanent injuries. So that although plaintiff may have been somewhat negligent in failing to be more careful before attempting to cross, that fact, as held in the Howard case, supra, will not excuse defendants for the negligent act of so driving the electric machine. As

held in the Strauchon case, supra, respondent here, seeing the electric car at a distance west, nearly a block, had a right to assume that at the usual speed, that car would not reach her until she had time to cross in safety.

Furthermore, by her own evidence, Mrs. Ford was not, when she saw plaintiff standing in the center of the street and about to cross, using ''the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury or death to persons on, or traveling over, upon or across'' a public street. [Act of March 9, 1911 (Laws 1911, p. 330, sec. 9).]

The second point made by learned counsel for appellants under his assignment as to contributory negligence is that if a pedestrian sees an automobile approaching near him on the street which he proposes crossing, he must continue to observe its movements and that failure to do so is negligence on his part. We do not think that under the facts here present and under the authorities we have above cited, that point is well taken.

Counsel's third point under that assignment is, that stepping in front of an autmobile is negligence on the part of a pedestrian. It is true, if respondent did that, knowing of the presence of the automobile, she could not recover. But in the case at bar it distinctly appears that plaintiff here had every reason to suppose that this electric machine was not within striking distance. When she saw it, it was almost a block away and plaintiff had no reason to believe that she was in any danger from it. She was very much in the situation of the plaintiff in the Strauchon case, supra.

The second assignment of error is that the trial court erred in giving respondent's first instruction, which advised the jury that if they believed that appellants' automobile was not as near the right hand curb as possible, their verdict should be for respondent and against appellants, because the ordinance so providing was not pleaded specifically or in substance in the petition. As we have seen, by stipulation of counsel, the petition was

amended before the trial, so as to specifically insert in it the clause when referring to the provisions of the ordinance and the disregard of it, in that appellants had driven the electric machine along and over a public street without slowing down as she approached the crossing, "and without keeping as near as possible to the right-hand curb of said avenue," so that this is distinctly pleaded. When we come to the discussion by the learned counsel for appellants of this point, that is, to error on the part of the trial court in allowing respondent to read in evidence ordinance 1327 of the city of St. Louis, for the reason that the ordinance is not pleaded specifically or in substance, the section of the ordinance referred to (section 1327, Revised Code of 1912 of the City) was read in evidence, and the only objection made to its introduction was of this kind. "Mr. Blodgett: I object to the introduction of the ordinance under this petition." This was overruled, defendants excepting. That objection means nothing.

The final assignment is that the trial court erred in giving respondent's first instruction, which advised the jury that if they believed that appellants' automobile was exceeding a speed of ten miles an hour, their verdict should be for respondent and against appellants, because the ten-mile ordinance is in conflict with the statute and is therefore void.

This is a challenge of the validity of ten-mile ordinance of the city as being in conflict with the statute and as inconsistent with the Act of the General Assembly of this State relating to motor vehicles, approved March 9, 1911. [Session Acts 1911, p. 322.] When these sections 1338 and 2585 were offered in evidence, counsel for appellants said: "I make the same objection to that," evidently referring to the one we have previously set out, which, as we have seen, was a mere general objection to the introduction of the ordinance under the petition, without assigning any specific ground of objection. The validity of the ordinance was in no manner challenged by such an objection. It is therefore apparent that that question, that is to say, as to the validity

of these ordinances of the city governing the movement of automobiles through the streets of the city, as tested by the Act of the General Assembly approved March 9, 1911, is not before us. All we have before us are the ordinances of the city, pleaded, as we think, sufficiently, and introduced without any specific objection or with any objection that we can take note of. One of those ordinances provides that the speed limit in the resident parts of the city, or in the parts other than the business portions of the city, shall not exceed ten miles an hour. The learned counsel for appellants has himself said in his brief in this case, that "any speed in excess of the speed limit prescribed by valid ordinance is negligence *per se* under the universal doctrine in this State," citing many cases in support of this proposition. As the ordinance prescribing the speed limit was, as we hold, properly pleaded and in evidence without proper objection, and that ordinance prescribing that the speed should not exceed ten miles an hour in the district mentioned, there is no room for controversy over the fact that this was a negligent act on the part of appellants. Appreciating the learning, skill and industry of counsel in briefing and arguing this point, we are compelled to say that question is not here before us in this case and we must decline to enter into a discussion, much less into a decision, of it.

Finding no reversible error to the prejudice of appellants in this case, the judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.

## ON MOTION FOR REHEARING AND TO TRANSFER TO SUPREME COURT.

REYNOLDS, P. J.—Learned counsel for appellants, with other associate counsel, have filed two motions, one for rehearing, the other asking us to transfer the cause to the Supreme Court. While in the motion for rehearing it is claimed that our judgment is in conflict with controlling decisions of the Supreme Court and of our own court and of the other appellate courts of the State on the merits of the case, we do not think, on consideration of the authorities cited

by learned counsel in support of this that they sustain that contention.

As a further ground it is claimed that the right of recovery is based on an ordinance of the city of St. Louis regulating motor vehicles, and that if the cause of action is based on an ordinance, or if an instruction is given based on an ordinance, or if evidence is admitted by the trial court on the theory of a valid ordinance, the question of the validity of the ordinance is in the case from start to finish and may be raised in any court at any time, because, if there is no valid ordinance on which to base the judgment, the judgment must fall, it being claimed that the appellants had not waived the question of the validity of the city ordinance regulating motor vehicles.

The motion to transfer to the Supreme Court is practically grounded on this claim, it being contended that this case involves a construction of section 23, article 9, section 25, article 9, of the Constitution of Missouri, section 26, article 3, of the Charter of the city of St. Louis, and section 9582, of the Revised Statutes of Missouri, and it is claimed that these questions have been duly presented and arise on consideration of the validity of the ordinance upon which the plaintiff based her claim, and that upon such a state of facts this is a case involving the construction of the Constitution of this State, within the meaning of our Constitution and statutes.

In the assignments of error originally filed in this case no attack whatever is made upon the petition as being insufficient, this point being made for the first time in the motion for rehearing. We might conclude to disregard this point, following well settled rules of practice, as evidenced by numerous decisions in the State; but will say that we do not think the petition is objectionable on that ground. It is true that it charges violation of the city ordinance but it also pleads the State law regulating automobiles, in effect, and charges that in violation of the duty imposed ''by law as well as by ordinance,'' defendant had ''negligently, and without

using the care required by law to prevent injury to plaintiff, ran said automobile at a high and dangerous rate of speed, and at a rate in excess of ten miles an hour, and without sounding any warning, and without slowing down as she approached the said crossing, into and upon plaintiff, thereby with great force and violence striking plaintiff, knocking her down and seriously and permanently injuring her." This invokes both the ordinances and the statute. As far as the petition is concerned, therefore, it does state a cause of action, either under the city ordinance or under the State law. While this is so, it is true that by the main instruction given for plaintiff the case went to the jury on the ground of a violation of the city ordinance.

As noted in the main opinion, the city ordinances regulating the speed and movement of automobiles through the streets of the city of St. Louis, when offered in evidence, were objected to in the most general way, no reason whatever being assigned for the objection. We there noted the objection to the ordinance, when first offered, made by counsel for appellants, was: "I object to the introduction of the ordinance under this petition." When other ordinances or sections of the ordinance were offered in evidence, all the objection counsel for defendants made was: "I make the same objection to that." We held that these objections did not challenge the validity of the ordinances.

It is now urged that the validity and constitutionality of the city ordinances regulating automobiles and their speed through the city, is open by reason of the instruction having been based on those ordinances and the giving of that instruction objected to, and that that instruction was again challenged in the motion for new trial. As to this, it may be said that the objection to the instruction was a general one, without specifying in any manner whatever that it was objectionable because based on an unconstitutional or void city ordinance. When we examine the motion for the new trial we find it contains fourteen assignments of error: First, that the verdict

is against the evidence. Second, against the weight of
the evidence. Third, against the law as declared in the
instruction given by the court. Fourth, against the law
and the evidence. Fifth, because the court erred in re-
fusing to give instructions asked by defendants. Sixth,
because the court erred in giving instructions asked by
plaintiff. Seventh, because the court erred in its state-
ment of the measure of damages if a verdict was found
for plaintiff. Eighth, because the court gave instruc-
tions for the plaintiff in conflict with instructions the
court gave for defendants. Ninth, because the court re-
fused to sustain the defendants' demurrer at the close of
plaintiff's case. Tenth, because the court refused to sus-
tain the demurrer of the defendant John W. Ford at the
close of plaintiff's case. Eleventh, because the court re-
fused to sustain the demurrer of the defendants at the
close of all the evidence. Twelfth, because the court re-
fused to sustain the demurrer of defendant John W.
Ford at the close of all the evidence. Thirteenth, be-
cause the court erred in sustaining objections of plain-
tiff to competent and relevant evidence offered by de-
fendants. Fourteenth, because the court erred in over-
ruling objections by the defendants to irrelevant, incom-
petent and immaterial evidence offered by the plaintiff.
Not one of these grounds for a new trial presents or
raises in any manner whatever the point here attempted
to be raised as to the invalidity or unconstitutionality of
the ordinance, which question is now attempted to be in-
jected into the case for the first time by the motion for
rehearing and to transfer to the Supreme Court.

The answer in this case, beyond a general denial,
was a plea of contributory negligence.

Our Supreme Court in Lohmeyer v. St. Louis Cor-
dage Co., 214 Mo. 685, 113 S. W. 1108, commencing at
page 689, and considering whether it had jurisdiction of
a case, appealed to that court, said that the Supreme
Court, if it had jurisdiction, had it because "a consti-
tutional question was raised and is involved in the four-
teenth clause in the motion." The fourteenth clause re-
ferred to charges that section 6433, Revised Statutes

1899, was unconstitutional because it was special legislation as denounced in sections 53-4, article 4, of our Constitution; because it deprived defendant of its rights as a citizen of the United States under section 1 of the Fourteenth Amendment of the Federal Constitution; and because said statute and verdict deprived it of its property without due process of law guaranteed by said Fourteenth Amendment.

Quoting this fourteenth assignment, or ground in the motion for new trial, our Supreme Court said:

"A constitutional question might possibly obtrude itself at the trial regardless of the pleadings through some unanticipated ruling on the introduction of testimony, when such question was squarely and with due precision made on objection and exception saved. If raised in that way in an appropriate case, and if the trial court had a chance to correct its error under an appropriate ground in the motion for a new trial, the point would be saved on appeal. So a constitutional question might be preserved on appeal in rare cases by a clause in the motion for a new trial when it did not appear elsewhere in the record. An example of that kind of a case would be where the court had given some instruction directly or by necessary implication for the first time involving the Constitution—for instance, permitting nine jurors out of twelve to render a verdict. [Logan v. Field, 192 Mo., l. c. 66.] In such case, or cases of a kindred nature, the first door open for a constitutional question to enter would be in the motion for a new trial. Appellant could raise it no sooner and nowhere else. But it must be taken as settled law that in so grave a matter as a constitutional question it should be lodged in the case at the earliest moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. [Barber Asphalt Paving Co. v. Ridge, 169 Mo. l. c. 387, et seq.] If plaintiff grounds his right of action on a statute which defendants contend is unconstitutional it should be put in the answer and kept alive. If the defendants grounds an affirmative defense on a statute that plaintiff

contends has a like vice, it would seem he should plead its unconstitutionality in the reply (though that has been questioned.) [Kirkwood v. Meramec Highlands Co., 160 Mo. 111.] If proper to put it in instructions, it should be lodged there and the ruling of the court invoked. Unless one or the other of those courses is pursued, life enough is kept in no such question to give this court jurisdiction on appeal except in one instance, viz.: where on the whole case some provision of the Constitution was either directly or by inexorable implication involved in the rendition of the judgment and decided against appellant.''

The conclusion of the court was that as the appellant had neglected to inject its constitutional question in its answer and in its instructions, it neglected its opportunity and should be held to a waiver. That case was followed and approved by our Supreme Court in Woolley and Fish v. Mears and Woodruff, Exrs., 226 Mo. 41, 125 S. W. 1112, where at page 52, Judge WOODSON says that in the case then before the court which had originated before a justice of the peace and where no pleadings were required, but where the trial court based its declaration of law upon an Act of the Legislature and at the time appellant objected to the court giving the instruction and to the judgment of the court because said Act was unconstitutional, that that was a timely saving of exception and presented the question of the constitutionality of the Act to the Supreme Court, citing Lohmeyer v. St. Louis Cordage Co., supra, as stating the uniform rulings of the court as to the matter of timely objection. [See, also, Municipal Securities Corporation v. Kansas City, —— Mo. ——, 186 S. W. 989.]

The same rule was held to apply when the validity of an ordinance was sought to be challenged as unreasonable. [Bluedoin v. Missouri Pacific Ry. Co., 121 Mo. 258, l. c. 271, 25 S. W. 943.]

In the case at bar, the answer, we have seen, was a general denial, accompanied by a plea of contributory negligence. If the defendant, appellant here, had de-

sired to test the validity or constitutionality of the city ordinance regulating the speed of automobiles in the city, that was the time to raise it because the plaintiff had distinctly pleaded these ordinances. in her petition. [Lohmeyer v. St. Louis Cordage Co., supra.]   He did not do that.

When the ordinances were offered in evidence counsel for appellant could then have objected to them as void under the statute and Constitution, specifying the provisions relied upon, assuming, but not holding, that he had not lost his right to do so by failure to attack the petition by answer. But he did not do so. So that by his action upon this point that counsel failed to warn plaintiff or the trial court of the pitfall which he now seeks to dig.

The main instruction given at the instance of plaintiff clearly put these ordinances before the jury as a ground for recovery. Defendant, appellant here, in no manner whatever, except by the general exception to the instruction as a whole, in any manner, challenged the correctness of this instruction permitting the jury to find for plaintiff on a violation of the ordinance.

As we have seen, the motion for new trial in no manner whatever challenged the validity of the ordinance or raised any constitutional question.

Appellant has seen fit to bring up with the record a memorandum opinion filed by the learned trial judge in overruling the motion for new trial. In that memorandum the learned trial judge says: "Defendants, in support of their motion for a new trial, relying solely upon the contention that plaintiff's own evidence shows her to have been guilty of such contributory negligence as to preclude her as a matter of law from recovering, cite and quote from, in support of their position, numerous Missouri cases declaring that the duty to look is a continuing one, and that the duty does not cease until after the range of danger has been passed; and ask the court to apply those authorities to the facts in this case." The trial judge then proceeds to discuss this proposition exclusively and determines it adversely to the contention of appellants. defendants below.

Thus it will be seen that in no manner whatever was the attention of the trial court called to the point, a point made for the first time in our court when this case was here argued and again insisted on in the motion for a rehearing and to transfer to the Supreme Court.

In a very recent case, that of Taber v. Missouri Pacific Ry. Co., not yet officially reported, but see 186 S. W. 688, it is stated that in the oral argument before the Supréme Court, the appellant for the first time contended that the facts in the case clearly show that the decedent was engaged in handling cars engaged in interstate commerce at the time of his death, and that for that reason the judgment should be reversed upon the appeal. It is further stated that in the. reply brief this same point was urged.

Mr. Commissioner BROWN, who wrote the opinion adopted by the majority of the court *in banc,* says of this:

"The first question, therefore, is whether this point is now before us. The petition clearly states a cause of action founded upon the provisions of section 5425, of the Revised Statutes of Missouri of 1909, and asks the penalty therein imposed."

Quoting the Federal statute (section 1, chap. 149, Act April 22, 1908, p. 65, 35 Stat. at L., sec. 8657, Compiled Statutes 1913), Commissioner BROWN continues:

"No reason has been suggested why this petition does not state all the facts necessary to a recovery by these children under the Missouri statute cited. That it does not state a cause of action in favor of the personal representative of the deceased under the Federal statute is clear, for there is no statement of the vital fact that the injury was inflicted while the defendant was engaging in commerce between the states and territories, and while the deceased was employed by it in such commerce. It follows, from the statement in the petition of all the facts necessary to constitute a perfect cause of action under the state statute, that if it is sought to defeat it, by showing the additional facts that the injury was inflicted while the defendant was engaging in inter-

state commerce, and while the deceased was employed by it in such commerce, those facts should have been pleaded in the answer. This was the first step provided by the Missouri Code for presenting such matters for the determination of the court.''

Commissioner BROWN notes that at the trial it was in evidence that one of the objects of the work in which deceased was engaged was in the making up of a train to go west from Kansas City, and that certain cars bore initials, the meaning of which were not explained, but of which counsel asked the court to take judicial notice. The learned Commissioner then says:

''If this testimony tended to prove that the appellant and deceased were engaged in interstate commerce at the time of the injury, there was still an opportunity under the Missouri Code for the defendant to conform his answer to such evidence and to have the question submitted to the jury. Instead of doing this, he asked, and the court granted, its submission upon the theory, inconsistent with the terms of the Federal statute, that contributory negligence on the part of the deceased, constituted a complete defense to the action. To raise the question upon appeal the statute expressly required (R. S. 1909, sec. 2081) that it should appear in the record that it was submitted to the determination of the trial court, and was expressly decided against the appellant. There is nothing in the record indicating this. On the contrary, the appellant, after having availed himself of the defense of contributory negligence under the State statute and lost, is now seeking to recede, because, for the purpose of gaining this advantage, to which it was not entitled, it had concealed its real defense. . . . Having digged this pit, it is appropriate that the appellant should have been the one to fall into it. The question of the application of the Employers' Liability Act (Act April 22, 1908, chap. 149, 35 Stat. 65) not having been decided by the trial court, no exception with respect to it can be taken here.''

The section of our statute referred to by Mr. Commissioner BROWN (section 2081), provides:

''No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court.''

It appears in the case at bar, not only by the record proper but by the statement of the learned trial judge, which counsel for appellants has seen fit to bring before us as part of the record in the case, that no such proposition and point as now attempted to be raised for the first time in this court, was ever presented, considered or passed upon in the trial court. The opinion heretofore rendered is modified to some extent in its verbiage: in all other respects it will stand.

By the same line of reasoning and on the decisions cited, we hold that no constitutional question has been saved, and we conclude that no question as to the validity of the city speed ordinance has been raised, because no such point was made in the trial court nor presented there for consideration. Section 2081, Revised Statutes 1909, is just as applicable here as on any like situation. That is to say, no such exception was presented to and passed on by the trial court. We are forbidden by that section to notice an exception not made in the trial court. While the argument of learned counsel for appellants is specious, it is not sound. We cannot consider the validity of the speed ordinances on this appeal for the conclusive reason that their validity was not attacked in the trial court in this case.

It is well settled in our State that the question of whether a petition totally fails to state a cause of action, or whether the case is one within the jurisdiction of the court, is open for consideration on appeal, even if no attack has been made on it below, for the jurisdiction of the court depends on that. The latter was the situation in State ex rel. McEntee v. Bright, 224 Mo. 514, l. c. 527, 123 S. W. 1057. But that does not reach this case. Here the petition counts not only on the ordinance but on the statute. Even assuming that the ordinance is void, the petition is still good as counting on the statute.

Finding no constitutional question and no question as to the validity of the ordinance under the statute and constitution saved in such manner as to warrant a transfer of the case to the Supreme Court, we have no power to transfer this case to the Supreme Court.

The motion for rehearing and the motion to transfer to the Supreme Court are overruled. All concur.

*Errata.* In Isabel Flaiz, Appellant, v. Chicago, Burlington & Quincy Railroad Co., Respondent, 194 Mo. App. 472, the *Per Curiam* Opinion on Motion for Direction of Judgment, appearing on pages 481 and 482 should not have been reported, as said supplemental opinion was withdrawn by the following order of court:

ISABEL FLAIZ, Appellant, v. CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, May 26, 1916.

Appeal from the Circuit Court, City of St. Louis.

Now at this day the court doth consider and adjudge that the order modifying the opinion and decision in the above entitled cause, filed therein May 16, 1916, is hereby set aside and the opinion then filed is withdrawn, the original opinion in the cause filed April 4, 1916, and the order then made reversing the judgment of the Circuit Court of the City of St. Louis and remanding the cause being now reinstated as of that date, and the motion of appellant for a modification of that order is overruled.

I, Jos. Flory, Clerk of the St. Louis Court of Appeals do hereby certify that the foregoing order is a true copy of same made May 26, 1916.

In testimony whereof, I have hereunto set my hand and affixed the seal of our said office this 4th day of Aug., 1917.

Jos. FLORY, Clerk.

It, therefore, follows that said supplemental opinion, as well as syllabus 3 relating thereto, should be disregarded.

T. E. FRANCIS, Reporter.