FRANK H. BURDE, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Respondent.

**Kansas City Court of Appeals, March 4, 1907.**

1. **RAILROADS: Negligence: Trespasser: Duty of Engineer.** Where a trespasser in a railroad yard deliberately chooses a position in the midst of activities that are pregnant with danger and then takes no thought of his safety, he is guilty of negligence; and an engineer owes him no duty to look out for his safety and is entitled to the presumption of a clear track except where people have a lawful right to be or continued use has established a pathway.

2. ———: ———: ———: ———: **Humane Doctrine.** Where action is predicated on a breach of humane duty the burden is on the plaintiff to show affirmatively that he was in eminent peril and was unconscious thereof and had defendant been in the exercise of reasonable care he would have had knowledge of these facts in time to avoid the injury by a reasonable employment of the means at hand; and on the evidence in the record plaintiff fails to make such case.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

AFFIRMED.

*Mytton, Parkinson & Crow* for appellant.

(1)   Defendant was guilty of negligence in kicking or shunting the car back upon plaintiff after seeing him in a perilous condition upon its track and plaintiff will be permitted to recover although a trespasser and having exposed himself to the risk of injury.   Klockenbrink v. Railroad, 81 Mo. App. 351; Hutchinson v. Railroad, 88 Mo. App. 376; Degel v. Transit Co., 101 Mo. App. 56; Baxter v. Transit Co., 103 Mo. App. 597; Klockenbrink v. Railroad, 172 Mo. 678; Rapp v. Transit Co., 190 Mo. 161; Reyburn v. Railroad, 187 Mo. 565; Koegel v. Railroad, 181 Mo. 379; Scullin v. Railroad, 184 Mo. 695; Fearons v. Railroad, 180 Mo. 208.   (2)   Opposing law point 1, respondent's brief, see Emmons v. Quade, 176 Mo. 32.

*Culver & Phillip* for respondent.

(1)   It is the duty and prerogative of the court to direct a verdict for a party where a verdict, if found for the opposite party, would be set aside because against the law and evidence.   Morgan v. Dunfee, 69 Mo. 476; Jackson v. Hardin, 83 Mo. 175; Mexico v. Jones, 27 Mo. App. 534; Reichenbach v. Ellerbe, 115 Mo. 588; Hite v. Railway, 130 Mo. 132; Asphalt Co. v. Transit Co., 102 Mo. App. 469.   (2)   The plaintiff was guilty of contributory negligence as a matter of law under the evidence, and the court, therefore, properly sustained a demurrer at the close of the evidence.   Mackowik v. Railway, 94 S. W. 256; Green v. Railroad, 90 S. W. 805; Schmidt v. Railroad, 191 Mo. 215.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant.   The answer was a general denial and plea of contributory negligence.   At the conclusion of all the evidence, plaintiff was nonsuited and after his

motion to set aside the nonsuit was overruled brought the case here on appeal.

The injury occurred in the railroad yards of defendant in St. Joseph at a point near the south end of its freight depot. The tracks of the main line, which runs north and south, are west of the freight house, but several tracks diverge from these tracks at a point south of the building and run into it through several openings therein. Platforms extending south from the building occupy the spaces between these depot tracks and are used in the loading and unloading of cars. Plaintiff was struck by a moving freight car, which was being shunted by a switch engine towards the depot on the westernmost track leading into it. This track curved eastward from its junction with the passing tracks and the triangular space enclosed by the two tracks and the building was occupied by a short platform. A longer platform ran parallel to the track on the east. It was built on piling and was two or three feet above the ground. When box cars stood on the track, the space between them and the west line of the last mentioned platform was about eight inches. Plaintiff, a young man about nineteen years old, had secreted a fishing pole under this platform and, desiring to use it, went to a point in the track opposite the place where he supposed the pole to be and knelt for the purpose of reaching under the platform for it. In the position he assumed his feet extended over the east rail of the track. Evidently, he was delayed by difficulty either in finding the pole or in extracting it from its hiding place and, while he thus was engaged, a freight car was run on the track towards the depot by a switch engine at work in the vicinity. Plaintiff was about fifty feet from the switch and the car approached him at the rate of three or four miles per hour. He did not become aware of its presence on that track until an instant before the car reached him and while rising to his feet in his sudden effort to es-

cape was struck by the brakeman's ladder near the end of the car, overthrown and in some manner one of his feet was crushed by one of the wheels.

Plaintiff's negligence is indisputable. He was a trespasser on defendant's property, deliberately chose a position in the midst of activities that were pregnant with danger to him and then took no thought for his own safety. Such conduct, manifestly, is so careless that it is unnecessary to discuss it. He entered into peril solely through his own negligence and not on account of any fault of defendant. There is some evidence, though of slight value, that the bell of the engine was not rung as a warning of the nature of the work in progress, but the operators of the engine owed plaintiff no duty since they had no reason to anticipate that anyone would be where he was. He would have it appear that persons unconnected with the service of defendant sometimes loitered around the depot tracks and platforms and therefore that the trainmen should have taken into account the likelihood of some such person being on or near the particular track where he happened to be, but the facts disclosed by his own evidence show very clearly that this track, ending in the freight house and enclosed by platforms, was not and could not have been in use by pedestrians or by persons having business to transact. Persons not employed in the yards could have no reasonable excuse for being on that track and certainly the rule imposing on the operators of railroad trains the duty of observing some degree of care towards trespassing pedestrians, where a custom has grown up of using the track as a thoroughfare, should not be applied in a situation such as the one before us. That rule is founded on an impulse of common humanity that prompts an ordinarily prudent and humane person who is in control of a dangerous force and who knows that people are making a practice of placing themselves within its sphere of action, to adopt reasonable means to avoid injuring them

regardless of the fact that they are wrongdoers in thus exposing themselves to danger. But, though an engineer should know that idle or curious persons may be encountered in all sorts of out of the way places and in absurd positions, no principle of law or humanity requires him to govern his actions by thought of the possibility of such sporadic occurrences. He is entitled to the presumption of a clear track except at places where people have a lawful right to be or where by open continuous and extensive use the track has been made a pathway for footmen or put to some such use. [Frye v. Railway, 98 S. W. 566, and authorities cited.]

But it is argued by plaintiff, that, though he did reach his perilous position solely by his own negligence, the evidence shows the engineer of the switch engine had actual knowledge of his danger in time to have warned him of the approach of the car and, had such warning been given, he could have escaped injury. The engineer was discharged from the service of defendant before the trial of the cause and it is on his testimony, which he gave as a witness for plaintiff, that the humane doctrine is invoked. A reading of the testimony of this witness convinces us that he was animated by a feeling of hostility to defendant engendered by the circumstances of his discharge, but, eliminating that conclusion from our consideration, we will deal with his testimony from the standpoint that it was a truthful product uncolored by prejudice. He stated that first he kicked some cars down the passing track, which runs immediately west of the depot, at which time he saw plaintiff "down on his knees at the platform trying to get something out;" then he proceeded to switch the car that inflicted the injury and says, "When I pulled down to eight (the track in question) to kick the car back when I kicked it I seen him there but supposed he would get out of the way. After I turned the car loose, I didn't see him no more . . . the car was between him and me.

Q. Did you give him any warning? A. I think the bell had been ringing; don't know whether it was ringing then or not."

If the engineer had actual knowledge of the existence of facts which would have suggested to a reasonably careful and humane person that plaintiff was in a position of peril and was unconscious thereof, it was immaterial that plaintiff was a trespasser at a place where he had no right to be and was negligently omitting to use his senses for his protection. The engineer possessed of such knowledge would have been duty-bound to employ all reasonable means at his command to avoid the infliction of an injury and his failure so to do would make his master liable for the consequences of his inhumanity. But where the action is predicated on a breach of humane duty, the burden is on plaintiff to show affirmatively that he was in imminent peril, was unconscious thereof, and that, had defendant been in the exercise of reasonable care, he would have had knowledge of these facts in time to avert the injury by a reasonable employment of means at hand. The engineer knew that plaintiff was in a place where, if he remained, he would be in range of the passing car and had there been anything in the situation to indicate to a reasonable person that plaintiff was unmindful of the fact that danger was approaching, the engineer should not have sent the car forward without first giving warning signals to attract the attention of plaintiff. The engineer, who it must be borne in mind was introduced as a witness by plaintiff, says he supposed plaintiff would get out of the way, which is but another way of saying that he saw nothing in the appearance of plaintiff that suggested to him the possibility that plaintiff was not aware of what was going on around him. We know of no facts in the record on which the witness reasonably may be accused of having acted imprudently or in a manner below the standard fixed by the dictates of humanity. The engine

in switching had passed and repassed plaintiff at a distance of some twenty feet from the place where he was kneeling. Considering the noises incident to switching operations, their close proximity to plaintiff would justify anyone in the situation of the engineer in thinking that plaintiff was mindful of their presence and was giving due attention to his safety. A very slight effort and one of brief duration would have sufficed to remove plaintiff from the sphere of danger and the mere fact that he continued in the posture described, but with ample opportunity to escape when the car was shunted, was no indication that he was in actual peril. For aught that appeared, the engineer was justified in thinking, as he did, that plaintiff would get out of the way. Loiterers around railroad yards often take foolish chances out of mere bravado. To require trainmen, every time they see one of them in range of a moving train or car, to act on the supposition that he may be in actual danger, would be at variance with the presumption that until something to the contrary appears one is always justified in believing that another is not acting negligently but is making a reasonable use of his senses.

There being no evidence in the record to sustain a reasonable inference that plaintiff's danger should have been apparent to a reasonably prudent person in the position of the engineer, there was no issue of fact to submit to the jury. The subject under consideration was very fully considered by us in the recent case of Bennett v. Railway, 122 Mo. App. 703, and we refer to the opinion in that case and the authorities therein cited for a further expression of our views.

The judgment is affirmed. All concur.