LALA MOFFATT, Respondent, v. LINDER W. LINK, Appellant.

Springfield Court of Appeals, March 25, 1921.

1. MUNICIPAL CORPORATIONS: Pedestrians have Equal Rights with Motorist to Use of Streets.  A pedestrian has equal rights with a motorist to use streets and is not restricted to the crossings at

street intersections or sidewalks, but may proceed along the street.

2. ———: **Where Motorist's View is Obstructed he Should Exercise Highest Degree of Care.** Where only the dash lights on a motor car were burning and they gave very little illumination, and the night was stormy and snowy, the driver of a car along streets on which pedestrians were entitled to pass and repass is bound to exercise the highest degree of care.

3. ———: **Motorist Cannot Drive on Street on Assumption that Pedestrians will keep to the Sidewalk.** As pedestrians have rights equal to that of motorist to use the streets, a mortorist cannot drive along a street on a dark, stormy night on the theory that pedesttrians will keep to the sidewalks.

4. ———: **Question of Motorist's Negligence Held under Evidence for Jury.** Where on a dark, stormy night a motorist, whose dash lights alone were burning, struck a pedestrian walking in the street, and it appeared that his view was obscured, as the dash lights would not even reveal objects which might be struck by the fenders, *held*, that the question of the motorist's negligence was for the jury, and a demurrer to the evidence could not on that ground be sustained.

5. **TRIAL: On demurrer to Evidence it Must be Accepted as True and Reasonable Inferences Deduced Therefrom.** For the purpose of demurrer to evidence, it must be accepted as true and reasonable inferences deduced therefrom.

6. **NEGLIGENCE: Contributory Negligence Must be an Efficient Cause of Injury.** For contributory negligence to be sufficient to prevent recovery, it must be such as to enter into and form the direct producing and efficient cause of the casualty and absent which the casualty would not have happened.

7. **MUNICIPAL CORPORATIONS: Pedestrians May Assume that One Driving Automobile Will Exercise Required Care.** A pedestrian has the right to assume that a driver of an automobile will exercise the degree of care required.

8. ———: **Pedestrian who Proceeded Down Street on Dark, Stormy Night after Looking Back Once, not Guilty of Contributory Negligence as Matter of Law.** Where three young women on a dark, stormy night left the sidewalk for the street, and after looking behind them once, proceeded for about a half a block without further looking back, when plaintiff, who was on the side fartherest from the curb, was struck by a motor car, *held*, under the circumstances, that plaintiff could not be deemed guilty of contributory negligence as matter of law.

Moffatt v. Link.

9. ———: In Action by One Struck by Motor Car, Error to Submit Humanitarian Doctrine. Where defendant's motor car was lighted with only dash lights, which did not show objects which might be struck by the edge of the fenders, and defendant proceeding through the dark, the night being snowy, struck a pedestrian in the street of whose presence he was unaware, it was error, notwithstanding defendant may have been negligent in failing to properly light his car or give warning, to submit to the jury the humanitarian doctrine, as he did not know of the presence of the pedestrians.

10. ———: Instruction on Duty of Motorist not Open to Attack. In an action by a pedestrian who, while proceeding on the street, was struck by a motor car, an instruction that, if at the time plaintiff was walking on the street defendant failed to use the highest degree of care, and negligently and carelessly operated his automobile by failing to keep a vigilant watch, or negligently operated the same at a dangerous rate of speed, etc., and struck plaintiff, verdict should be for her, was not erroneous; for, as under Laws 1911, p. 33, sec. 12, subd. 9, which was then in force, a motorist was required to exercise the highest degree of care, the submission of the question whether he kept a vigilant watch was not error.

11. ———: Instruction on Duty of Motorist to give Warning of his Approach, not Error. As Laws 1911, p. 326, sec. 8, subd. 2, required a motorist on approaching a pedestrian on the traveled part of the highway to give timely signals by his horn, an instruction in an action by a pedestrian struck in the dark by a motorist, whose lights did not illuminate anything beyond his fenders, that, if he failed to give timely warning, the motorist was liable, was not error; for it was not only the duty of a motorist to keep watch for pedestrians, but to give warning in case his view was so limited that he was liable to come upon them without seeing them.

12. TRIAL: Instruction as to Rights of Pedestrian Improper, as Ignoring Duty of Pedestrian. In an action by a pedestrian run down on a highway, an instruction that a pedestrian has as much right on the highway as does a motorist, and is entitled to assume that the motorist will exercise the required degree of care, while abstractly correct, might place the defendant motorist as an unfair advantage where it did not state the duty of a pedestrian to care for her safety.

Appeal from the Webster Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED.

*Barbour & McDavid* for appellant.

(1). The plaintiff was guilty of negligence in leaving the sidewalk and walking several hundred feet out in the roadway of the street on a very dark night and without once looking back, when to look was to see the lights of the approaching automobile, and without paying any heed or attention to her surroundings, or to her own safety. She knew that automobiles, jitneys and street cars frequently ran on this street both day and night, and plaintiff testified that she never looked back after she went into the roadway. Her contributory negligence is clearly established. Theobald v. Transit Co., 191 Mo. 429; Lowry v. Smith, 198 S. W. 437 (Mo. App.); Petty v. Railroad, 179 Mo. 674; Minor v. Stevens, 42 L. R. A. (N S.) 1178; Berry on Automobiles, sec. 214 and 215; McGauley v. Transit Co., 179 Mo. 590; Owens v. Railroad, 188 Mo. App. 454; Engleking v. Railroad, 187 Mo. 164; Willis v. Harby, 144 N. Y. Supp. 154; Mills v. Powers, 102 N. E. 912; Harrigan v. Wright, 63 Atl. 234; Wilkins v. Transp. Co., 101 N. Y. Supp. 650. (2) When to look is to see, the injured person is held to have seen. The lights on the automobile were burning and plainly visible to plaintiff if she had looked. McGee v. Railroad, 214 Mo. 545; Barrie v. Transit Co., 102 Mo. App. 91 and 93; Sanguinette v. Railroad, 196 Mo. 495; Hook v. Railway, 162 Mo. 580; Pennell v. Railroad, 153 Mo. App. 570; Dyrcz v. Railroad, 238 Mo. 47; Markowitz v. Railway, 186 Mo. 357; Kinlen v. Railroad, 216 Mo. 158. (3.) All witnesses who testified on the subject, Dr. Pipkin, Carl Thomas and Claude German saw the automobile lights. What they saw, the plaintiff could have seen if she had looked. Burge v. Railroad, 244 Mo. 94; Payne v. Railway, 136 Mo. 384; Vandeventer v. Railroad, 177 S. W. 838; Carlson v. Railway, 187 S. W. 845; Osborn v. Railroad, 179 Mo. App. 259. (4) The action being based on the Humane Rule, under the facts conceded and proved in the case at bar, plaintiff concedes

that she was guilty of negligence in placing herself in a place of danger, and it was error to submit that issue to the jury. Clark v. Railroad, 242 Mo. 605; Webb v. Railroad, 196 S. W. 88 (Mo. App.); Laughin v. Railroad, 144 Mo. App. 205; Eiseman v. Griffith, 181 Mo. App. 186; Strauss v. Railroad, 166 Mo. App. 155; O'Farrell v. Railroad, 157 Mo. App. 619; Johnson v. Railroad, 203 Mo. 415; McGee v. Railroad, 214 Mo. 541; Whitesides v. Railroad, 186 Mo. App. 617-618; Kreymeyer v. Transit Co., 220 Mo. 650. When a different rule prevails is clearly illustrated in the following cases: O'Keefe v. Railways Co., 124 Mo. App. 613; Davis v. Railroad, 155 Mo. App. 318. (5.) The Humane Rule only applies and authorizes a recovery where the injured party is ignorant of, or oblivious to impending danger. And where the action is predicated on a breach of humane duty the burden is on the plaintiff to show affirmatively, that she was in imminent peril, was unconscious thereof, and that, had the defendant been in the exercise of ordinary care, he would have seen plaintiff and had knowledge of such facts in time, thereafter, to avert the injury with the means at hand and with safety to the occupants of the automobile. Ellis v. Railway, 234 Mo. 672; Knapp v. Dunham, 195 S. W. 1062; Miller v. Harvey, 199 Mo. App. 633; Williamson v. Railroad, 139 Mo. App. 492; Keele v. Railroad, 151 Mo. App. 377; Burde v. Railroad, 123 Mo. App. 634; Lewis v. Railway, 181 Mo. App. 423; England v. S. W. Ry. Co., 190 S. W. 32; Pope v. Railroad, 242 Mo. 238; Kinlen v. Railroad, 216 Mo. 164; Pennell v. Railroad, 153 Mo. App. 571; Moore v. Railroad, 176 Mo. 544; Veatch v. Railroad, 145 Mo. App. 238; Webb v. Railway, 196 S. W. 87; Guyer v. Railroad, 174 Mo. 350. (6.) The Humane Rule does not apply in cases where the driver had no warning that the party injured was oblivious to the situation, or that she was about to put herself in a position of danger. Ellis v. Railway, 234 Mo. 672; Knapp v. Dunham, 195 S. W. 1062; Miller v. Harvey, 199 Mo. App. 633; Williamson v. Railroad,

139 Mo. App. 492; Keele v. Railroad, 151 Mo. App. 377; McGee v. Railroad, 153 Mo. App. 498; Pennell v. Railroad, 153 Mo. App. 571; Pope v. Railroad, 242 Mo. 239; Kinlen v. Railroad, 216 Mo. 164; Haffey v. Railway, 154 Mo. App. 495; Shelton v. Railroad, 167 Mo. App. 410; Schupp v. Railroad, 166 Mo. App. 601; Sites v. Knott, 197 Mo. 712; Draper v. Railway, 199 Mo. App. 489; Wasmer v. Railroad, 167 Mo. App. 219; Reeves v. Railroad, 251 Mo. 178; Degonia v. Railroad, 224 Mo. 594; Veatch v. Railroad, 145 Mo. App. 239; Reno v. Railroad, 180 Mo. 488.

*George W. Goad* and *John Schmook* for respondent.

(1)   The proximate cause of plaintiff's injury was defendant's negligence in operating his automobile as alleged and established by the evidence. Solomon v. Duncan, 194 Mo. App. 517; Knoxville Ry. and Light Co. v. Vaughilder, 132 Tenn. 487, 178 S. W. 1117; West Court Co. v. White, 130 Tenn. 530, 172 S. W. 301; Lawson v. Fon du Lac, 141 Wis. 57, 123 N. W. 629; McManus v. Wolverton, 10 N. Y. Sup. 545; McDonald v. Yoder, 101 Pac. 468; Felver v. Railroad, 216 Mo. 195, 212.   (2) Plaintiff was not shown guilty of such contributory negligence as would bar her recovery as a matter of law. Dignum v. Weaver, 204 S. W. 566; Lowery v. Smith, 198 S. W. 437; Meenach v. Crawford, 187 S. W. 879; Sullivan v. Chauvenet, 186 S. W. 1090; Frankel v. Hudson, 271 Mo. 503; Osterman v. Implement Co., 255 Mo. 128; Caradine v. Ford, 195 Mo. App. 684; Hodges v. Chambers, 171 Mo. App. 563; Bongner v. Zeigenhein, 165 Mo. App. 328; Wyler v. Ratican, 150 Mo. App. 474; Felver v. Railroad, 216 Mo. 195, 212.   (3) Under the evidence it was clearly a question for the jury whether or not defendant was guilty of negligence under the humanitarian rule. Rowe v. Hammond, 172 Mo. App. 203; Lowery v. Smith, 198 S. W. 439; Frankel v. Hudson, 196 S. W. 1123; Grouch v. Heffner, 184 Mo. App. 372; Hodges v. Chambers, 171 Mo. App. 563; Wyler v.

Ratican, 150 Mo. App. 474. (4) Under the evidence, plaintiff was entitled to recover under the humanitarian rule, as defendant, by the exercise of ordinary care would have discovered plaintiff in a position of peril, in time, by the exercise of ordinary care, to have avoided injurying her. Taylor v. Met. St. Railway, 256 Mo. 213; Ostermeier v. Implement Co., 255 Mo. 128; Clark v. Railroad, 242 Mo. 570; White v. Railroad, 202 Mo. 560; Rowe v. Hammond, 172 Mo. App. 203; McDonald v. Yoder, 101 Pac. 568; McManus v. Wolverton, 19 N. Y. Sup. 545. (5) Specific acts of negligence—under statute or common law—together with negligence which invoke the humanitarian rule, may be pleaded in one count; and it is proper for the court to instruct the jury on both theories. Taylor v. Met. St. Railway, 256 Mo. 191; Fleming v. Railroad, 263 Mo. 189; Farrer v. Railroad, 249 Mo. 210; Clark v. Railroad, 242 Mo. 570; Nivert v. Railroad, 232 Mo. 636; Murphy v. Railroad, 228 Mo. 123; Krehmeyer v. Transit Co., 220 Mo. 639; White v. Railroad, 202 Mo. 560; Haly v. Railroad, 197 Mo. 23; Ropp v. Transit Co., 190 Mo. 144; Hoffinger v. Young, 179 S. W. 747; Owen v. Delano, 194 S. W. 756; Vaughn v. Lemp Brewing Co., 152 Mo. App. 48; De Rousee v. West et al., 200 S. W. 783. (6) Plaintiff is not required to allege, nor is the jury required to be instructed, that plaintiff was unconscious of her danger, and that defendant by the exercise of ordinary care could have seen that she was unconscious thereof. Morgan v. Railroad, 159 Mo. 262; Kinder v. Railroad, 216 Mo. 164; Bybee v. Dunham, 198 S. W. 190; Hoffinger v. Young, 179 S. W. 747-749; Ottofy v. Trust Co., 196 S. W. 428; Guenter v. Railroad, 108 Mo. 18; Riska v. Railroad, 180 Mo. 168; Chamberlain v. Railroad, 133 Mo. 587, 595, 602. (7) Plaintiff's instruction No. 1. followed the petition, was authorized by the evidence, and properly submitted to the jury the case made by plaintiff under the specific allegations of negligence. Cool v. Peterson, 189 Mo. App. 725; Sapp v. Hunter, 134 Mo. App. 685. (8) Plaintiff's instruction No. 2, properly submitted her case under

humanitarian rule. Hoffinger v. Young, 179 S. W. 747, 749; Ottofy v. Trust Co., 196 S. W. 428; Murphy v. Railroad, 228 Mo. 70; Hall v. Railroad, 219 Mo. 577, 591; Vaughn v. Lemp Brewing Co., 152 Mo. App. 48; Guenter v. Railroad, 108 Mo. 18; Riska v. Railroad, 180, Mo. 168; Chamberlain v. Railroad, 133 Mo. 587, 595, 602; Eppstien v. Railroad, 197 Mo. 736; Rayburn v. Railroad, 187 Mo. 572; Rapp v. Transit Co., 190 Mo. 144; Morgan v. Railroad, 159 Mo. 270.   (9) Plaintiff's fifth instruction properly submitted the law relative to the right of plaintiff and defendant on the public highway, and was not an abstract statement.   Ottofy v. Trust Co., 196 S. W. 428; Dignum v. Weaver, 204 S. W. 566; Caradine v. Ford, 195 Mo. App. 684; Hodges v. Chambers, 171 Mo. App. 573; Wyler v. Ratican, 150 Mo. 474; Felver v. Railroad, 216 Mo. 195, 212; Rapp v. Railroad, 190 Mo. 160; Kennayde v. Railroad, 45 Mo. 255, 262.

BRADLEY, J.—At a prior term we affirmed the judgment in this cause, but granted a rehearing. Plaintiff sued to recover damages sustained by defendant running her down with his automobile in a public street in the city of Springfield, Missouri. Plaintiff recovered and defendant prosecutes this appeal.

The acts of negligence alleged are: (1) That defendant when approaching plaintiff failed to keep a vigilant watch for persons traveling on the street; (2) that defendant was operating his automobile at a great and dangerous rate of speed; (3) that the automobile was being operated in the nighttime and while it was dark without giving any warning of his approach; (4) that defendant did not have sufficient lights. Also a paragraph based upon the humanitarian rule is embraced within the petition. The answer is a general denial, a plea of contributory negligence; and an ordinance of the city is pleaded as a justification for the character and kind of lights defendant had on his automobile at the time.

207 Mo. App.—42

Plaintiff at the time of her injury, in March, 1916, was a young woman, twenty-two years of age, and a student at the Normal School in Springfield. With her two sisters, Minnie and Gertrude, all dressed in dark colored clothing, she was walking east in the roadway in Monroe Street, between Jefferson on the west and Kimbrough. Plaintiff and her sisters in going from up town about ten o'clock at night walked south on the sidewalk on Jefferson to Monroe and crossed to the south sidewalk, and turned east on the sidewalk on Monroe. The night was dark and stormy, "no moon, no stars," and a wet snow was falling in large flakes, but was melting rapidly. There was a street light at Monroe and Jefferson, and one at Monroe and Holland, some 1200 feet east, Plaintiff and her sisters kept to the sidewalk for about 100 feet, then because it was so dark and snow on the walk, they took the street. In the center of Monroe is a street car track. The street is paved, except for about 9 feet in the center, with concrete. The nine feet in the center is paved with brick, the brick pavement extending about two feet beyond either rail of the track. The distance from the brick pavement to the south curbing is 13.8 feet. Plaintiff and her sisters were walking abreast, close together, plaintiff on the north, Gertrude in the middle and Minnie on the south. They were walking as close to the south curb "as they could." A test was made at the trial as to the distance the three sisters extended when standing abreast as they say they were walking, and the test, it is agreed, showed four feet. Plaintiff then when walking east on Monroe, was at least eight feet from the south side of the brick pavement. Defendant had no head lights burning, but had two dash lights, and his curtains were up. He entered Monroe from the north from Jefferson, and drove east at twelve or fourteen miles an hour. The dash lights lighted no space beyond the side extremities of the fenders, and possibly not to that extent. Defendant gave no warning of his approach, and plaintiff did not hear or see him, and saw no reflection of the approaching light.

He drove his car upon her, the right fender striking her in the left side fracturing the third, fourth and fifth ribs about three inches from the spine. Also she had a fracture of the base of the skull, and was unconscious from the time struck till about five o'clock next morning. Plaintiff knows nothing of how far the automobile moved after striking her, but her sisters gave it thus: Gertrude: "We were walking along, all at once something took my sister away and then I screamed. I guess I screamed and then we both started to run after the car. Lala was jerked loose from my left arm, and then I screamed. I ran some piece before I caught up with where my sister was. I could not say how many feet; it was quite a little piece I think. Q. About how far, how many lengths of an automobile as near as you can state? A. I just could not say, I should imagine four or five lengths of an automobile, because we ran after the car and screamed as hard as we could before he ever stopped that car . . . When I got up there to where my sister was, she was just kind of a round ball under the front wheel on the south side of the machine. After we got her in the house her clothes were badly torn, and her face was badly bruised and her ears bleeding." Minnie: "That car just passed by us pretty fast, it just went by us quick; just in a flash. Gertrude screamed, we both screamed and ran after the car. It is hard to give the exact distance that we ran. If the automobile is twelve or fifteen feet long I should judge we ran about seven or eight lengths. When we got up there Lala was fastened down under the car. She was around the front wheel fastened some way. When we carried her in the house her face was skinned and bleeding and her ear was bleeding; she was unconscious and her clothing torn to rags." Defendant carried plaintiff into a house nearby and called a physician, and afterward had her removed to a hospital.

Defendant says that the steering wheel of his machine was on the right hand side; that his dash lights were electric and burning; that the wheels of his machine were entirely on the brick paving; that he selected

the brick part of the pavement because it was smoother; that he was running about ten or twelve miles an hour, that his engine was old, and running at that speed made a good deal of noise; that he had a clear vision in front of him while he straddled the rail, that he could see the glisten of the electric light on the rail, that he could see this rail clear up to Holland street; that he had his eyes right ahead, looking all the time, and that there was never anything in his view; that if a person had been in front of his car *within the range of his lights* he would have seen them; that he could see at least 400 feet ahead. That the first information he had that he had struck some one, he heard the girls scream, and that he stopped immediately and got out, and that plaintiff was "lying on the pavement just at the right of my front wheel, she was on the concrete" and her sisters were there. That plaintiff was entirely free from the machine. That his car was astride the rail when he struck plaintiff, and was still astride the rail when he stopped. As to where he was driving and how quickly he stopped after striking plaintiff defendant is corroborated by a jitney driver who was some thirty-five or forty feet behind at the time of the accident. Speaking of his lights defendant said: "There was hardly any spread to them outside the limits of the car, so that in order for me to see an object they would have to come within the rays of those lights as I proceed to the front. Q. Describe the lamps that you used that night, and that you were burning at the time of the accident? A. They were a regular standard dash light, about four and one-half inches in diameter, the face of them equipped with about ten candle power lamp."

Defendant assigns as error the refusal of his instruction in the nature of a demurrer; the submission of the cause under the humanitarian rule; and the giving of instructions.

Defendant was driving his automobile on a public street where pedestrains had a right to be. [Meenach v. Crawford, 187 S. W. (Mo.) 879; Carradine v. Ford,

195 Mo. App. l. c. 700, 187 S. W. 285; Hodges v. Chambers, 171 Mo. App. 563, 154 S. W. 429.] In the motion and brief for rehearing defendant analyzes the three cases cited in an endeavor to show that they are not an thority for the proposition that plaintiff had a right to be on the roadway of the street. In Meenach v. Crawford, this language is used: "The law of this State is well settled to the effect that the deceased was lawfully upon the street at the time and place where he was injured and killed. Pedestrains have the same rights as drivers of vehicles to use and traverse a highway at all points and are not restricted in crossing streets at the intersection of two streets or avenues; such fact, however, might have some bearing upon the question of contributory negligence." Defendant contends that the language quoted shows that the court did not have in mind a pedestrain walking *along* the street, but has reference only to one crossing the street. It is true that the court was there dealing with a case where injury resulted to a pedestrian while crossing a street. If defendant's contention be granted then the word *use* has no place therein, and serves only to confuse. The Supreme Court in a later case, Reynolds v. Kinyon, 222 S. W. 476, confirms, we think, the idea expressed in the Meenach case. In the Reynolds case it appears that a small child, while running across a street, was run down by an automobile. There it is said: "The right of each to be upon the street is subject to the obligation to use it with due regard to the safety and use to all. The law expressly recognizes the dangerous character of the automobile in respect to both its speed and its weight, which particularly makes it an instrument of death to those it strikes. In this respect it recognizes also that persons on foot are liable to be found on any portion of the street. The statute (Laws 1911, page 327) provides that: 'Upon approaching a pedestrian, who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching an intersection highway or a curve or a corner in a highway, where the operator's

view is obstructed, every person operating a motor ve-
hicle shall slow down and give a timely signal with his
bell, or horn, or other device for signaling.''

The statute recognizes the right of a pedestrian to
be on the traveled portion of a street, and does not limit
the use to merely crossing it. The conditions prevailing
at the time a pedestrian takes the roadway of the street,
and the manner in which he conducts himself there would
have some bearing on the question of contributory negli-
gence and that is all. Defendants' curtains were up so
he could not see to the side. It was dark and snowing
and according to his own evidence there was snow on his
wind shield; and according to one of his witnesses, Dr.
Pipkin whom defendant called to see plaintiff, and who
had the ordinary lights on his machine, one could not
see more than twenty or thirty feet ahead on account of
the snow. Dr. Pipkin testified: ''It was a wet snow and
would adhere when it struck anything. I couldn't have
seen very far, probably twenty or thirty feet.'' Under
these circumstances, and with lights that defendant knew
would not disclose an object unless directly in front and
possibly not then, he proceeded down a public street
with no warning of his approach save that made by the
engine and the running of the car upon the pavement.
The highest degree of care was enjoined upon him, and
since pedestrians have as much right to use the roadway
of a street as has a vehicle, a driver of an automobile
cannot proceed along a public street under such circum-
stances on the assumption that pedestrians will keep to
the sidewalks except at crossings. That plaintiff was in
the street instead of on the sidewalk enters into the
question of her negligence, but such will not go to excuse
defendant from the degree of care incumbent upon him.
[Carradine v. Ford, supra; Howard v. Scarritt Estate,
267 Mo. 398, 84 S. W. 1144.] There is no support for
the demurrer on the theory that defendant was free from
negligence, hence we pass to the alleged contributory
negligence of plaintiff.

Plaintiff says that she and her sisters stepped off the walk into the street; that it was snowing and there was snow on the walk, but the snow had melted in the street. That there was a street light on the corner, and that the light was thrown out into the street. That when they stepped in the street she turned around and looked to see if there was any car coming of any kind, and that there was no street car or vehicle coming at that time, and that she did not look back again. She estimated the distance they walked after entering the street and before she was struck at half a block. All three of the sisters say they were walking close to the sidewalk. By applying the figures offered by defendant to the evidence of plaintiff as to where she was walking when struck, she was about five feet north of the south curb or eight feet south of the brick paving in the center. Gertrude said the sidewalk was narrow and was of brick and snow was on it, and that it was better walking, and was lighter in the street. Minnie gave about the same reason for taking the street. For the purpose of the demurrer we must consider the evidence introduced by plaintiff as true, and consider as established every reasonable inference deducible therefrom which the law warrants. [Meenach v. Crawford, supra; William v. Railroad, 257 Mo. 87, 165 S. W. 788.] All the authorities are of course one way as to the presumption and inferences in considering a demurrer to the evidence, and we will not burden the opinion with needless citations. Thus we have a young woman twenty-two years of age, on a dark night and snowing who leaves the sidewalk and takes the street because it is lighter and better walking and free from snow; and when she enters the street she looks back for vehicles and sees none, and then proceeds on the street, thirty-six feet wide, walking within five feet of the curb. She does not look back any more, but proceeds. She walks about a half a block, and is struck by an automobile. We are asked to say that under these circumstances and conditions plaintiff was guilty of contributory negligence as a matter of law.

In Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S. W. 1144, cited supra, speaking of the *quantum* of contributory negligence necessary to defeat recovery the court said: ''The rule as to the *quantum* of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct producing and efficient cause of the casualty, and absent which the casualty would not have happened.'' In Hodges v. Chambers, 171 Mo. App. 563, 154 S. W. 429, the St. Louis Court of Appeals after speaking of the correctness of the doctrine of cases applicable to car tracks observes that such doctrine is not applicable in determining the rights of an automobile and a pedestrian on a public street or driveway. It was there held that pedestrian have a right to presume that one driving an automobile would exercise that degree of care required by the law. In Carradine v. Ford, supra, the same court refers to the rule announced in the Hodges case and says: ''In Hodges v. Chambers, Judge ALLEN there speaking for our court after holding that the great number of cases dealing with the duty of one in crossing or walking upon railroad tracks or street car tracks, while correctly applied in cases of that kind because such tracks are in themselves a warning of danger, holds that such cases have no application in the case of a pedestrian going along the public street of a city or town has as much right on a driveway as any one else and has a right to presume that one driving an automobile would exercise that degree of care enjoined upon him by law. This principle is so sound and so in line with modern conditions that it ought not to be questioned anywhere.''

Also in determining the question of plaintiff's negligence regard should be had for the time and place she stepped into the street proper. The circumstances are different in the case at bar and those cases where injury has resulted to a pedestrian stepping into a street already laden with traffic and in a business district. Such is the case of Lowry v. Smith, 199 Mo. App. 163, 198 S.

W. 437. In the last cited case we held that it was the duty of a person crossing a public street in a city to make reasonable use of all his senses in order to avoid injury, and if he failed to do so and was injured by reason of such failure he could not recover. In that case the question as to whether the pedestrian had made the proper use of his senses was submitted to the jury and properly so, and the facts there tended more strongly to show contributory negligence than do the facts in the instant case. We find no authority to support the contention that plaintiff was as a matter of law guilty of such negligence contributing to her injury as would defeat recovery. Hodges v. Chambers, supra, answers the contention that she knowingly chose the street where danger was more likely than on the sidewalk where danger from vehicles was unlikely. There it is said, l. c. 570: "Neither is the case before us analogous to the numerous cases cited by appellant in which it is held that one cannot recover where he knowingly chooses a dangerous road or passageway when a safe one is at hand. This for the reason that the driveway in question was a public highway, and could only be said to have been dangerous when made so by the failure of the drivers of vehicles to exercise the care required of them by law. Plaintiff was entitled to rely upon the presumption that such drivers would not be negligent, and hence it cannot be said that plaintiff had any reason to suppose that it would be dangerous for her to walk upon the driveway."

In Felver v. Railroad, 216 Mo. l. c. 212, 115 S. W. 980, Judge LAMM presents the question: "Must a citizen who is driving on the people's highway and who, getting on the track of a street railway, laid in said highway, is driving along in that track, must such a man constantly look to the front and to the *rear* in order to exercise due care in front and behind?" The question is answered in the negative. There the driver was on the track where he must have known that he would be in danger if a street car approached from the rear. In

the case here plaintiff was within five feet of the curb, according to her case. The street was not laden with traffic. She looked back when she entered the roadway of the street, and took to the street because of the condition of the sidewalk and the light. We decline to hold her guilty of contributory negligence as a matter of law.

Was it error to submit the humantarian issue? Defendant contends that it was error to submit the cause under the humanitarian doctrine for two reasons. First, because the petition does not allege sufficient facts to bring the cause under that doctrine, and second, because under the facts in evidence there is no place for said doctrine. In view of our conclusion as to the second proposition it is not necessary to consider the petition. Under the facts may the humanitarian doctrine be invoked? In Burde v. Railway, 123 Mo. App. 629, 100 S. W. 509, it is stated: "Where the action is predicated on a breach of humane duty, the burden is on plaintiff to show affirmatively that he was in imminent peril, was unconscious thereof, and that, had defendant been in the exercise of reasonable care, he would have had knowledge of these facts in time to avert the injury by a reasonable employment of means at hand." This states the law applicable to that case and to the instant case. In his brief under this assignment defendant says: "The uncontroverted evidence shows that the night was very dark and that plaintiff was not seen by the defendant and that under the existing conditions she could not have been seen by him. It is plain that she never was at any time directly in front of the automobile and never came within its lights. She was struck by the corner of the fender showing clearly that she was at the time of the collision barely within range of the outer side of the fender and not even then within range of the lights. How long had she been within range of the corner of the fender and how far away from her was the car? These questions are wholly unanswered by the evidence and cannot justly be solved by guess and speculation. Who, under this evidence, can say that the defendant

had a last clear chance of avoiding the accident?'' As we take it defendant contends in his brief that he was using lights which under the circumstances obtaining would not disclose an object the size of plaintiff although such object was within the range of the fenders. Plaintiff in her brief construes the evidence as to the lights to this effect. ''These lights were adjusted so that the rays did not extend beyond the inside line of the fenders. In order for the defendant to see a person or object in the direction in which he was proceeding the person or object would have to come within those lines.'' Both plaintiff and defendant in oral argument presented the case on the humanitarian doctrine on the theory that plaintff was not *seeable,* and we think that this was the fact, and we proceed on the same theory. Defendant relies upon Freeman v. Green, 186 S. W. (Mo. App.) 1166 and Roper v. Greenspoon, et al., 210 S. W. (Mo. App.) 922, to support his contention that his lights were in compliance with the law. Neither of these cases dealt with lights such as defendant had. They merely hold that side lights or dash lights, if otherwise sufficient, complied with the law.

The night was dark, a heavy, clinging snow was falling, defendant's windshield was partly covered, his lights would not disclose an object in the immediate path of the car, and according to Dr. Pipkin who had the *usual* lights burning on his car one could not see more than twenty or thirty feet ahead. Defendant was driving on a public street at fourteen miles per hour where pedestrians had a right to be, and where he was bound to know they might be. All these things defendant knew, yet can we say that the humanitarian rule will apply. In Starks v. Lusk et al., 194 Mo. App. 250, 187 S. W. 586, defendants' liability was based on the humanitarian doctrine in that defendants failed to have any person at the rear of the train while backing to keep a lookout for or to warn persons of danger, or cause the train to stop after seeing a person in peril. In that case plaintiff sued to recover for the death of her hus-

band killed by being run over by a freight train while backing over a trestle. The train passed over the trestle about 425 feet long going north as it approached the station, and after stopping at the station backed up in doing some switching so that the caboose reached the south end of the trestle. It was during the backing over the trestle that plaintiff's husband was killed. No one saw the accident. The court in discussing the points raised said: "The defendants' main insistence is that there is no proof whatever that the deceased was at the time and place of his death in a position of peril such that he and his peril could by the use of due care have been seen by those operating the train in time to have averted this accident." It was held that the facts in that case justified the submission under the humanitarian rule. The case was certified by this court to the Supreme Court and was affirmed. [See 216 S. W. 1119.] The court in the Starks case says: "It is asserted and properly so that in order to invoke the humanitarian doctrine, it must be proven that the person in peril was *seeable* by the trainmen while in peril *and in time* to avert injury by the use of the means at hand." It was defendant's duty to keep watch to ascertain the presence of pedestrians in front of his automobile. [Reynolds v. Kinyon, supra.] If defendant saw or by the exercise of ordinary care at the time could have seen plaintiff's peril and her obliviousness of said peril in time to have avoided injuring her by use of the means at hand, then the humanitarian rule would apply. But defendant was proceeding down a street where and when he *could not see* and where plaintiff was not seeable by him. There was no means at hand which defendant could use and by so doing make plaintiff *seeable* at the moment and at any time after plaintiff was in danger. Defendant failed to see plaintiff, not because of something he could or should have done after plaintiff became in danger, but because of something he did *prior* to the moment of plaintiff's danger, that is defendant at some prior time

had neglected to equip his car with lights that would disclose plaintiff.

The humanitarian doctrine proceeds on the theory of not going back of the moment when the injured party becomes in imminent peril. Speaking of the humanitarian rule it is stated in Rowe v. Hammond, 172 Mo. App. 203, 157 S. W. 880, that it, the rule, attaches no importance to the question of whose fault created or helped to create the peril that ripened into injury. "It does not go back of the fact of the existence of an imminent danger to a human being. That is the all important fact and every preceding event is mere history." We hold that the humanitarian rule has no application under the facts in the present case.

Defendant challenges plaintiff's instructions 1, 2, 3 and 5. Instruction number one is as follows: "The court instructs the jury that if you find and believe from the evidence that Monroe Street between Jefferson Street and Kimbrough Street was, on the 8th day of March, 1916, a public street, much used for travel in the city of Springfield, Missouri, and if you further find from the evidence that about 10:15 o'clock p. m. on the 8th day of March, 1916, the defendant was in charge of and operating the automobile mentioned in the evidence, running the same upon and along said Monroe Street in an easterly direction between said Jefferson and Kimbrough Streets, and if you further find from the evidence that at said time plaintiff was walking in an easterly direction upon and along said Monroe Street between said Jefferson and Kimbrough Streets, and if you further find from the evidence that at said time and place the defendant in charge of and operating said automobile, approached said plaintiff, and that he then and there failed to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury to persons traveling upon said street, but that he then and there negligently and carelessly operated said automobile by failing to keep a vigilant watch for persons traveling on said street, or

207 Mo. App.—43

that defendant was operating said automobile at a dangerous rate of speed, or carelessly and negligently operated said automobile in the nighttime, and while it was dark, and without giving any warning to plaintiff of his approach, and that plaintiff had no warning of the approach of defendant's automobile, and if you further find from the evidence that by reason of such acts or either of then, said automobile operated by defendant ran into or against plaintiff and injured her, and if you further find from the evidence that plaintiff was exercising ordinary care for her own safety then your ver-dict must be for the plaintiff.''

Defendant says that the statute then in force, section 12, subd. 9, Laws 1911, p. 330, did not require the operator of an automobile to keep a vigilant watch for persons traveling on a street. In Reynolds v. Kinyon, 222 S. W. 476, the Supreme Court held that it is the duty of one driving an automobile to keep watch to ascertain the presence of pedestrians in front of him. The statute at the time of plaintiff's injury required more than ordinary care, it required the highest degree of care. In Theobald v. Transit Co., 191 Mo. 1. c. 438, 90 S. W. 354, an instruction was challenged because it contained the language ''to keep a constant and vigilant watch ahead.'' The court there said that this was not a correct definition of the common-law duty of the motorman. The case there was a common-law action of negligence and not based on any statute as the court remarks and the defendant's negligence was measured by the rule at common law, that is its motorman was only required to use ordinary care. But in the case at bar defendant was by statute required to use the highest degree of care that a very careful person would use under like or similar circumstances. Vigilant watch is defined in Theobold v. Transit Co., supra, as an exceedingly careful watch. Measuring defendant's duty by the statute and not by the common law, he should have exercised the highest degree of care that a very careful person would have used in keeping watch. This

is more than the ordinary watch or lookout, and is clearly expressed in vigilant watch. It is urged that the instruction assumes that a failure to keep a vigilant watch is negligence *per se*. . The instruction tells the jury that if defendant negligently and carelessly operated his automobile by failing to keep a vigilant watch, that is if the jury found that defendant failed to keep a vigilant watch then he was guilty of negligence. If defendant was required to keep a vigilant watch, and failed to do so, then we do not know how this question could be a submitted except in language like or similar to that in the instruction. It is next urged that the instruction is bar because of the language: "And with out giving any warning to plaintiff of his approach, and that plaintiff had no warning of the approach of defendant's automobile." Defendant knew or should have known that pedestrians and other travelers might be upon the street and to give him the benefit of the most favorable evidence he knew he could not see all objects in the danger path of his car. Defendant escapes the consequence of the humanitarian rule because of this condition, and we are unwilling to say that this condition created by his prior negligence absolves him from his duty to give some reasonable warning in view of the conditions prevailing at the time that he was driving down the street. A buggy, an automobile or a person on horseback might have been on the street. Defendant could not have seen these any more than he did plaintiff. The statute, section 8, subdivision 2, Laws, 1911, p. 327, provides that a person driving an automobile on approaching a pedestrian on the traveled part of any highway and not upon a sidewalk shall slow down and give a timely signal with his bell or horn or other device for signaling.

Speaking of this statute the Supreme Court in Reynolds v. Kinyon, supra, said: "This recognizes the duty to not only keep watch to ascertain the presence of pedestrians in front of his vehicle, *but in case his view is so limited that he is liable to come upon them without*

*seeing them to warn them by a sound indicating his approach."* (italics ours). We find no error in instruction number 1.

Instruction number 2 is on the humanitarian theory, and number 3 also is in connection with that theory, hence there is no occasion for a consideration of the assignment based upon these instructions. Instruction number 5 is as follows: "You are instructed that the plaintiff as a pedestrian had as much right upon the driveway of Monroe Street as did the defendant with his automobile, and that the plaintiff had a right to presume that the driver of the automobile would exercise that degree of care mentioned in instruction No. 1 given by the court, in the operation of said automobile." As an abstract proposition the instruction states the law. The instruction states plaintiff's rights without mentioning her corresponding duties. Calling attention to her rights in the abstract without any mention of her duty as to the care she should observe for her own safety while walking in the street, and at the same time pointing out defendant's duties by reference to instruction number one, might place the defendant at an unfair advantage before the jury.

It is our conclusion that the judgment below should be reversed and the cause remanded, and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.