Arl Duckworth v. E. F. Dent, Appellant.—142 S. W. (2d) 85.

Division Two, July 3, 1940.

*W. P. Elmer* and *E. E. Roberts* for appellant.

*Barker, Durham & Drury* and *G. C. Beckham* for respondent.

WESTHUES, C.—This case was certified to this court by the Springfield Court of Appeals pursuant to a dissenting opinion by TATLOW, P. J. [See Duckworth v. Dent, 135 S. W. (2d) 28, l. c. 38.]

Respondent Duckworth obtained a judgment against appellant Dent in the sum of $3,000, as damages alleged to have been sustained by Duckworth when a parked car was pushed backward by appellant's car while appellant was parking his car on a street in Salem, Missouri. The suit was filed in Dent county, and on a change of venue the case was tried in Crawford county. From the judgment entered Dent appealed.

Respondent was injured in the following manner. Appellant drove his car north on highway number nineteen in Salem, Missouri, and parked it on the east side of the highway immediately south of Fourth street. There were two cars parked south of Fourth street on the highway and between these cars was a vacant space of about six or ten feet where Duckworth and one John Gallatin were standing engaged in conversation. There was not sufficient space north of these cars for Dent to park his car, so he backed it against the car farthest north and pushed this car south. This parked car rolled back and struck respondent, injuring him. The case was submitted to a jury solely on the humanitarian theory, although respondent in his petition charged a number of acts of primary negligence. Appellant asserts that the evidence did not justify the submission of the case under the humanitarian doctrine. To this we agree, because respondent's evidence showed that appellant was in no position to have discovered respondent in a position of peril. Respondent testified that he was standing between the cars with one foot on the bumper of the south car. Note his evidence on the question of discoverable peril:

"Mr. Gallatin and I were standing down on the street off the curb talking and Mr. Dent—I had my left foot up on the bumper of the car, and the first thing I knowed that he run this car back, before I even knowed what had happened, and I was gone down; it hit hard that way, and the car bounced three or four feet back, . . .

". . . it was not Dent's car that hit me—it was another car that was parked and Dent's car backed against it and hit it and it rolled against me; didn't see the car until it hit me; . . . Dent probably couldn't have seen me as he was backing the car from the

north on account of the car between us and he was seated in his car; . . . the car south of me did not move; the car from the north bumped back after it hit me;''

John Gallatin testified for plaintiff as follows:

''There was a car parked north of us six to ten feet, and we were standing at this car south and Mr. Dent backed in against this other car and knocked it down against Duckworth and this other car. . . . After the car hit, it rebounded about three feet back to the north. Duckworth said he was hurt, I helped him on the sidewalk. It happened in a short space of time. . . . For Dent to have parked in that zone he would have had to headed in toward Fourth Street and backed in. There was a short space between the car parked north of us and Fourth Street. He couldn't have got in between the cars where Duckworth and I were standing. When he backed in he hit the car immediately behind him, backed up against it and hit it. I don't believe the car had brakes according to the way it rolled. The car south of us never moved. The car Dent hit rolled back against Duckworth. I don't know that I saw Dent pass on Main Street. There were a lot of cars passing. . . . I don't suppose Dent could look back from his car as he was parking and see me and Duckworth standing there. He could have done it as he passed up the street and looked over to the curb where we were. After he got in line with the parking space the car in front of us would have blocked his view.''

Another witness for plaintiff, Louis Vance, testified as follows:

''There was about four to eight feet between the north end of the parked car to the north end of the parking zone. Dent would not have had to slide the car back more than two or three feet to be within the parking zone. He drove to the north and then cut in and then came back to the south. I didn't hear any horn that I remember of. I saw what he was going to do and got out of the way. I don't think Dent could have seen Duckworth from his car if Duckworth was standing in front of the third car, when Dent was backing in there.''

Respondent's theory of this case, regarding the humanitarian doctrine, seems to be that as Dent drove north past the space where Duckworth and Gallatin were standing he should have noticed them if he intended to park his car north of the car where the parties were located. Appellant testified he did not see the men, and Duckworth and Gallatin testified they did not see appellant. But even had Dent noticed the men standing between the cars, there was no peril at that time and not even a remote chance of respondent being injured. We must note that respondent's evidence showed there was a space of about six or ten feet between the cars where they were standing; that respondent was standing next to the south car, because he had one foot on the bumper of that car. We must also note that it was necessary to move the north car towards the south only about three

feet to give Dent sufficient space to park his car in the zone; that when he struck the north car with his car the parked car rolled back, after it struck plaintiff and the car to the south it bounced back about three feet. Plaintiff's witness stated that it seemed not to have had brakes. Had appellant pushed the car back only three or four feet it would not have touched Duckworth. Since respondent's evidence showed that appellant could not have seen respondent while he, appellant, was backing his car into the parking zone the humanitarian doctrine cannot be applied. One of the essential elements of the doctrine in Missouri is, that the defendant saw or by the exercise of care (in this case the highest degree of care) could have discovered plaintiff in a position of imminent peril. [Baker v. Wood et al., 142 S. W. (2d) 83; Banks v. Morris & Co., 302 Mo. 254, l. c. 267, 257 S. W. 482, 484 (2); 45 C. J., page 990, section 542; Missouri cases under note 19.] In the text above the note we find the following:

". . . recovery may be had, if such duty was owing from defendant, and the peril, although not actually discovered, could have been discovered by the exercise of ordinary care (by our statute, highest degree of care) in time to have avoided the injury."

That is the correct Missouri rule. [See Massman v. Kansas City Pub. Service Co., 119 S. W. (2d) 833, l. c. 836 (2).] However, a duty under the humanitarian doctrine does not arise until a situation of peril arises. [Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. (2d) 961, l. c. 970 (11, 12).] In the case before us the evidence leaves no doubt that the appellant could have backed his car into the parking zone and pushed back the parked car a sufficient distance to have parked his car in the zone without causing the parked car to strike respondent. The peril arose when the parked car began to roll toward plaintiff. The cause of this rolling, whether due to the brakes not being set on the parked car or to appellant striking it with unusual force, is immaterial under the humanitarian doctrine. Under plaintiff's own evidence, it was impossible after the peril arose for appellant to have averted the injury. [Bumgardner v. St. Louis Pub. Service Co., 340 Mo. 521, 102 S. W. (2d) 594, l. c. 597 (1-5).] The evidence disclosed that the parked car rolled against respondent and bounced back about three feet, indicating beyond doubt that appellant's car came to a standstill a sufficient distance north to permit such a rebound.

It is clearly a case of primary and contributory negligence as pleaded by the parties. Both of these questions should be, if the case is to be retried, submitted to a jury. It should not be submitted under the humanitarian rule or last clear chance doctrine.

The judgment is reversed and the cause remanded. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.