Charles GLENN, Plaintiff-Respondent,

v.

Donald OFFUTT, Defendant-Appellant.

No. 7613.

Springfield Court of Appeals.

Missouri.

Jan. 23, 1958.

A. L. Shortridge, Joplin, for defendant-appellant.

J. W. Colley, Greenfield, for plaintiff-respondent.

STONE, Presiding Judge.

 This factually unique suit for property damage arises out of a collision between *two unlighted* motor vehicles about 6:45 P.M., after "it was full dark," on January 25, 1956, on a graveled country road near Lockwood, Missouri. Following trial before the court sitting as a jury, plaintiff had judgment for $300. Upon this appeal by defendant, we review the case upon both the law and the evidence as in suits of an equitable nature, according due deference to the findings of the trial court [Section 510.310(4); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783(1)]; but, if the judgment nisi is clearly erroneous, it becomes our duty to enter such judgment as the trial court should have given. Section 512.-160(3); Allen v. Allen, 364 Mo. 955, 270 S.W.2d 33, 34–35(1); Wyler Watch Agency v. Hooker, Mo.App., 280 S.W.2d 849;

855(10, 11). (All statutory references are to RSMo 1949, V.A.M.S.)

The only witnesses were plaintiff and a trooper of the Missouri State Highway Patrol, who investigated three days after the accident; and the facts, as related by them, stand undisputed. The country road, on which the collision occurred, runs in an easterly-and-westerly direction, is fifteen feet in width "from one ditch to the other," and has one set of (i. e., two) ruts or tracks made by vehicular traffic. As plaintiff was driving his 1952 GMC pickup in a westerly direction on this country road, he ran out of gasoline, so he "parked" his pickup "just as far as I could get to the right-hand (or north) side of the road" with its left wheels "some," although "very little," south of the north rut or track in the road. The collision occurred after plaintiff had gone "to get some gas" and while his pickup was unoccupied. Plaintiff frankly stated that he "just forgot" to keep the lights burning on his pickup and readily admitted that he had paid a fine "for leaving the truck parked on the highway without lights." Defendant, traveling in a westerly direction on the same road, approached plaintiff's unlighted pickup ("deep green" in color, mudsplattered and dirty) from the rear. Our only information as to what occurred comes from the investigating trooper, who testified that defendant had said that "he was driving down the road and his lights went out and he reached under the dash to wiggle the wires to see if he could get them to come back on and suddenly he hit this pickup," and that the lights on his automobile had gone out "near a bridge" which the trooper located as being "ninety steps" east of the point of accident.

■■ Plaintiff pleaded both primary and humanitarian negligence; and, since the theory on which the trial court rendered judgment is not indicated in the record, we undertake to determine whether the judgment should be affirmed on any legal theory permitted by the pleadings and the evidence. Section 510.310(4); Emerson v. Treadway, Mo.App., 270 S.W.2d 614, 621. It is clear that plaintiff may not recover on *primary* negligence, because his conduct in permitting his pickup to remain at rest without lights on a public highway, at a time when lights were required by Section 304.270(9), constituted negligence per se [Leek v. Dillard, Mo.App., 304 S.W.2d 60, 64–65(6, 8), and cases collected in footnotes 4 and 5] and plaintiff thus was guilty of contributory negligence as a matter of law. Ensminger v. Stout, Mo.App., 287 S.W.2d 400, 405–406(3, 4). For that matter, plaintiff tacitly concedes his preclusion from recovery on primary negligence and argues only that, considering the evidence in the light most favorable to him and according to him all beneficial inferences reasonably deducible therefrom [De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633(3)], "a finding that defendant was guilty of humanitarian negligence" might be supported.

Defendant has not challenged and briefed, and so we do not determine and rule, the applicability of the humanitarian doctrine (as distinguished from the last clear chance doctrine) in a case involving only the *discoverable peril* of an inanimate, parked, unoccupied motor vehicle. However, we observe in passing that, if the humanitarian doctrine "proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled" [as averred in Dey v. United Rys. Co. of St. Louis, 140 Mo.App. 461, 467, 120 S.W. 134, 136, confirmed in the landmark case of Banks v. Morris & Co., 302 Mo. 254, 266, 257 S.W. 482, 484, and reiterated in literally "scores of cases" (see Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 489)], and if the doctrine "is reasoned upon precepts of humanity—that tender regard every man must have for the life and limb of other men in times of peace" [Krause v. Pitcairn, 350 Mo. 339, 350, 167 S.W.2d 74, 78], it would be difficult indeed for us to find room

for plaintiff's cold, lifeless, mud-splattered pickup within the enveloping warmth of the "Mother Hubbard," already bursting at the seams, which our humanitarian doctrine has come to be by expansion far beyond its original concept. Smith v. Siedhoff, Mo. (banc), 209 S.W.2d 233, 236; Schwarz, The Questionable Birth of the Missouri Humanitarian Doctrine, 14 Journal of the Missouri Bar 28 (1958). Consult annotation 171 A.L.R. 365, 413; Becker, The Humanitarian Doctrine, 15 M.L.R. 359, 361; Becker, The Supreme Court and the Missouri Humanitarian Doctrine in the Years 1950 and 1951, 17 M.L.R. 32, 34–35. But, "(s)ufficient unto the day is the evil thereof" and, leaving to those in position to speak with judicial finality any further consideration of whether our humanitarian doctrine has or should become "all things to all men" in vehicular tort actions, we pass to a determination of whether the evidence in the instant case would permit a judgment for plaintiff under the humanitarian doctrine, assuming the applicability of that doctrine in this class of suits.

An essential element of a cause of action under the humanitarian doctrine is that, after (either actual or, in a discoverable peril case, constructive) notice of plaintiff's position of imminent peril, defendant must have had the present ability with the means at hand to have averted the threatened harm without injury to himself or others [West v. St. Louis-San Francisco Railway Co., Mo., 295 S.W.2d 48, 52(5), and cases there cited]; and, since the humanitarian doctrine blots out all antecedent or primary negligence and seizes upon the situation as it exists when imminent peril comes into being [Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 779(10); Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75(6)], the ability of defendant thereafter to have averted the impending accident must be determined on the basis of the factual situation existing, and the means and appliances available, at the instant imminent peril arose.

In the case at bar, we are as much in the dark, as were the two unlighted vehicles at the moment of collision, as to when (if at all) defendant might have been charged with notice of the imminent peril of plaintiff's pickup and as to defendant's ability *thereafter* to have averted the accident with the means then at hand. Defendant's vehicle, wholly undescribed in the evidence, was identified in plaintiff's amended petition as a "1936 Ford automobile" and· in defendant's amended answer as a "1939 Ford coupe"; but, whatever its make and model, there was no showing as to the condition of defendant's vehicle, its brakes or its lights (before they failed). Although the road was "pretty well level," the record does not indicate whether the segment of road between the bridge and plaintiff's parked pickup was straight; and, there was not a scintilla of evidence as to defendant's sight distance ahead *before* the headlights on his automobile went out nor as to the visibility of objects *after* the headlights failed. Compare Moffatt v. Link, 207 Mo.App. 654, 670–673, 229 S.W. 836, 841–842; Putnam v. Unionville Granite Works, Mo.App., 122 S.W.2d 389. See also Cosentino v. Heffelfinger, 360 Mo. 535. 543–544, 229 S.W.2d 546, 551. Plaintiff averred in his amended petition that defendant was driving "at a high rate of speed, to-wit, fifty miles per hour," but the transcript is utterly devoid of *evidence* as to the speed of defendant's automobile, as to the distance within which it could have been stopped when traveling at any given rate of speed, or as to the facility with which it could have been swerved on this country road with two ruts or tracks in it. Compare Branscum v. Glaser, Mo., 234 S.W.2d 626, 628; Miller v. Wilson, Mo. App., 288 S.W. 997, 999(1). Consult also Breshears v. Myers, Mo., 266 S.W.2d 638, 640; Joplin v. Franz, Mo.App., 240 S.W.2d 209; Swain v. Anders, 235 Mo.App. 125, 140 S.W.2d 730, 736(9). In this state of the record, a judgment under the humanitarian doctrine would rest on nothing more tangible than sheer speculation, unbridled

conjecture and rank surmise, and thus could not stand. Batson v. Ormsbee, Mo. App., 304 S.W.2d 680, 683(6), and cases there collected; Farmer v. Taylor, Mo. App., 301 S.W.2d 429, 433(6).

■ Proof of defendant's *primary* negligence (if so) in traveling at a high and excessive rate of speed [cf. Payne v. Reed, 332 Mo. 343, 59 S.W.2d 43, 47(7)—see also Pentecost v. St. Louis Merchants' Bridge Term. R. R. Co., 334 Mo. 572, 576, 66 S.W.2d 533, 535; Chenoweth v. McBurney, 359 Mo. 890, 894–895, 224 S.W.2d 114, 117] or in driving with defective or insufficient headlights [cf. Moffatt v. Link, supra, 229 S.W. loc. cit. 841–842] could not have aided plaintiff in making a prima facie case under the humanitarian doctrine. For, the fact that a defendant, by reason of his antecedent or primary negligence, may have put it out of his power to have averted the accident after the incidence of imminent peril in no wise affects the non-applicability of the humanitarian doctrine. Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 422(5–7); Duckworth v. Dent, 346 Mo. 518, 523, 142 S.W.2d 85, 87. Consult also Homfeld v. Wilcoxon, Mo., 304 S.W.2d 806, 810.

Since the judgment for plaintiff cannot be sustained on any theory our statutory duty [Section 512.160(3)] is to set it aside and to enter judgment for defendant. It is so ordered.

McDOWELL and RUARK, JJ., concur.